In re the MARRIAGE of Lana Jean KURTH and James Ivan Kurth

Upon the Petition of

Lana Jean Kurth, Petitioner–Appellant,

and

James Ivan Kurth, Respondent–Appellee.

No. 88–297.

Court of Appeals of Iowa.

Feb. 23, 1989.

Edward N. McConnell and David S. Wiggins of LaMarca, Marcucci, Wiggins & Anderson, West Des Moines, for petitioner-appellant.

Vicki R. Copeland of Wilcox, Polking, Gerken, Schwarzkopf & Hoyt, Jefferson, for respondent-appellee.

Heard by DONIELSON, P.J., and SCHLEGEL and SACKETT, JJ.

SCHLEGEL, Judge.

The marriage of Lana Kurth and James Kurth was dissolved by decree entered on March 30, 1983. The two children of the marriage were placed in the physical custody of James, while joint custody was awarded to both parties. Lana was granted visitation and was ordered to pay child support of $175 per month per child.

In July 1985, Cory and Christopher left their father's home and moved in with Lana. Christopher remained with his mother until the spring of 1986, when his father refused to return him from a visit. Cory was still living with his mother at the time of the modification hearing. Cory does not visit his father, since there has been some strain in the relationship between James and Cory.

Both James and Lana have remarried. James and his wife have a son, Benjamin. Lana remarried sometime after the modification action was commenced.

Lana first filed an application to modify the decree of dissolution on October 16, 1984. That application was later dismissed, and she filed a new application to modify on June 3, 1987, which proceeded to trial on September 8, 1987. The primary issue before the district court was whether there had been a material and substantial change in circumstances to warrant a change in physical custody of the two boys from James to Lana.

The trial court, substantially adopting the proposed findings of fact submitted by James' counsel, found that there had not been a substantial change in circumstances sufficient to justify a change in custody of Christopher. The court awarded physical custody of Cory to Lana, and granted her visitation with Christopher, including continuous visitation for three weeks during the summer. James was granted visitation with Cory. Lana was ordered to pay all court costs and all back child support due before June 3, 1987. She was also ordered to pay $300 of James' attorney fees and was ordered to pay $200 per month in child support once Cory completes his secondary education, marries, or becomes self-supporting.

On appeal, Lana claims there was a substantial and material change of circumstances concerning Christopher, and that the court was in error in failing to award physical custody of Christopher to her. She also contends that she should have more than three weeks visitation with Christopher in the summer since she had six weeks in the original decree. She asks that James be required to pay part of the court costs and that he pay all of his own attorney fees.[1]

■ Our review of orders on applications to modify a dissolution decree con-

---

1. Lana initially asked that the court excuse her from the payment of back child support only up to the time she filed the original application for modification, to wit, October 16, 1984. However, in oral argument, counsel for Lana acknowledged that the court is without power to reduce child support retroactively or to excuse unpaid support from the time of the filing of the application for modification on the basis of *In re Marriage of Shepherd*, 429 N.W.2d 145, 146–47 (Iowa 1988). In *Shepherd*, the supreme court expressly overruled our case of *In re Marriage of Olive*, 340 N.W.2d 792, 795 (Iowa App. 1983). In light of *Shepherd*, Lana has withdrawn her request for retroactive reduction of the unpaid child support.

cerning custody of the parties' minor children is de novo. We give weight to the trial court's findings, although we are not bound by them. *In re Marriage of Zabecki*, 389 N.W.2d 396, 398 (Iowa 1986); *In re Marriage of Dethrow*, 357 N.W.2d 44, 45 (Iowa App.1984).

■ In considering a modification of the initial award of custody, the court looks for a material and substantial change in circumstances. *Marriage of Dethrow*, 357 N.W.2d at 45.

> The parent seeking to take actual custody from the other has the burden to show some superior claim based on his ability to minister, not equally, but more effectively to the children's well being. This principle is but a corollary to our rule that custody of children, once fixed, should seldom be disturbed and then only for the most cogent reasons.

*In re Marriage of Gutermuth*, 246 N.W.2d 272, 274 (Iowa 1976) (citations omitted). In determining whether to modify a custody arrangement, the focus is on the long-range best interests of the child or children. *Marriage of Zabecki*, 389 N.W.2d at 398. A child's preference is given weight, although less weight may be given in modification proceedings. *Id.* at 399–400.

■ We must deal with the effect of the court's ruling separating these two boys, placing custody of Cory with his mother, and retaining custody of Christopher with his father. There is a strong interest in keeping children of broken homes together. In order for a court to depart from this general rule, it must appear that separation may better promote the long-range interests of the children. *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). Although there is an indication of a close emotional tie between Cory and Christopher, we should note that at the time of the trial on this modification, Cory was just past 17 and Christopher was very nearly 10. The likelihood of their living in the same household for an appreciable time is more remote, since Cory attained his majority in August of 1988. As the court indicated, with the visitation schedule, the boys will have an opportunity to maintain a close bond.

■ Lana claims there was sufficient evidence of a change in circumstances to make a change of custody proper and necessary. Lana urges that James showed a material disinterest in the best interest of his children by "being abusive, by not being understanding and considerate in listening to their problems, in effect drove his older son, Cory, out of his home in July, 1985, and refused to return the younger son, Christopher, from an agreed to visitation in April 1986." While we do not agree with all of the findings of the trial court, as set out in the findings adopted by the court, we do not find that those matters referred to by Lana constitute a course of conduct that constitutes a substantial change in circumstances. Presumably, the court, at the time of the original decree, was aware of differences in both parties' lifestyles; considered evidence upon the quality care provided by each parent to both boys; considered the potential styles of discipline administered by the two parents; and made its decision on the basis of the evidence presented, with the knowledge that there were differences in the management and care of the children between the two parents.

We do not, however, approve of the court's adoption of substantial parts of the proposed findings of fact and conclusions of law submitted by James, and we find disagreement with those findings when we consider the verbatim transcript of the evidence. We especially disagree with the court's characterization of Christopher's testimony as referred to in the court's findings. The testimony speaks loudly of his desire to live with his mother and brother, rather than with his father. It also indicates that he is likely to accept, with some grace, the decision of the court. We do not, however, subscribe to the view that his testimony was strained or that he cannot be believed in his conviction, so definitely expressed.

Were this the hearing upon the initial determination of custody when considering the testimony of both Dr. Garfield and Mr. Krauss, together with the expressed

wishes of Christopher, we would be inclined to seriously consider placing custody with Lana. Since this is a modification matter, however, we do not believe there has been a sufficient showing of changed circumstances to justify a change in custody of Christopher. We affirm the trial court's ruling leaving Christopher in the custody of his father, James.

■ We also agree with the court in its reduction of the six weeks visitation during the summer months. As Christopher gets older, such a lengthy visitation will unduly disrupt summer activities, and may interfere with summertime pursuits he wishes to engage in.

The trial court ordered Lana to pay all costs and to pay $300 of James's attorney fees. As noted, Lana has withdrawn her request that we give her relief from the payment of back child support before the date of the filing of her application for modification. She had sole custody of both boys from July 1985 until April 1986, when Christopher was retained by his father. From that time, she has had the sole custody and support of Cory. During that same period, she has not paid support ordered by the decree. The child support in arrears constitutes a judgment in favor of James. The court correctly determined that Lana is obligated to pay that support. The court's ruling was favorable to Lana in the matter of the custody of Cory, but is unfavorable to her position as to the custody of Christopher.

We hold that the costs of this action shall be paid one-half by each of the parties and the parties shall pay their own attorney fees. As thus modified, we affirm the ruling of the trial court both as to custody and as to visitation. We admonish both parties to give special attention to the welfare of the children, and that they both remain aware that the children should have the maximum opportunity to have a beneficial relationship with both parents.

AFFIRMED AS MODIFIED.