ACCOMACK COUNTY DEPARTMENT OF SOCIAL
SERVICES

v.

KHALIL MUSLIMANI

No. 0051-90-1

Decided April 2, 1991

COUNSEL

Bruce D. Jones, Jr., for appellant.

J. Nicholas Klein, III (Klein & Hopkins, on brief), for appellee.

Thomas B. Dix, Jr. (Glen A. Tyler; Tyler, Custis, Lewis and Dix, on brief), guardian *ad litem.*

OPINION

**BARROW, J.**—This appeal is from three orders denying a petition of the Accomack County Department of Social Services (the "Department") for the custody of three infant children. The trial court determined that the children were not neglected and allowed them to remain in the custody of their father, Khalil Muslimani. The Department contends that the trial court erred in not reopening the proceeding to receive additional evidence and in denying the Department's petition for custody. We hold that it is in the best interests of the children to reopen the proceeding to receive the additional evidence offered by the Department, and, therefore, we do not reach the issue of whether the trial court erred in denying the Department's petition for custody.

On January 6, 1978, Khalil Muslimani married Ruth Johnson. Ruth had two children of her own when she married Muslimani: Stacey, age three, and Selena, age two. During the marriage, Ruth and Muslimani produced three female children: Samira, Fatina, and Somiah ("the three children" or "the three girls"). At the time of trial, these children were eleven, ten, and nine years old, respectively.

Gail Walker, child protective service coordinator for the Department, testified that Muslimani acknowledged to the Department that he began a sexual relationship with Stacey when she was eleven. At trial, Muslimani did not explicitly verify this and,

in fact, invoked his fifth amendment right not to incriminate himself. However, when Muslimani was asked at trial whether he became sexually interested in Stacey at age ten or eleven, he answered that "this sudden relationship" came about as the result of a dream in 1985 in which his grandfather told him that he was going to have a son even though Ruth could no longer have children. Ms. Walker further testified that when Stacey was twelve, Muslimani fathered a son by her, Rasheed Muslimani. One year and nine months later, Muslimani fathered another child by Stacey, Christina Muslimani.[1] Muslimani also acknowledged that when Stacey was eleven, she aborted a child he believed to be his.

In February, 1988, Ruth obtained a Dominican Republic divorce from Muslimani. In August, 1988, the Department received a complaint from Ruth. As a result of the complaint, the Department conducted a sexual abuse investigation. However, a few days later Ruth called back and said she had "made the whole thing up." On July 30 or 31, 1989, Ruth called again and made allegations of sexual abuse of Stacey. After further investigation, the Department removed Selena from Ruth's custody and the remaining three children from Muslimani's custody and placed all the children in foster homes.

The Juvenile and Domestic Relations District Court entered an emergency order granting temporary custody to the Department and providing limited visitation to the father. However, twelve days later, after a hearing, the court returned custody of the children to their father, and the Department noted its appeal. On October 19, 1989, following that decision but before the appeal was heard in circuit court, Muslimani and Stacey were married in Maryland.

On October 31, 1989, the trial court held a custody hearing concerning the children. In addition to her testimony described above, Gail Walker testified that Muslimani, in all other ways, was a good father to the children and that the children did not like foster care. However, she stated that Muslimani was a "high risk" because his relationship with Stacey was incestuous (he raised her as a daughter) and incestuous fathers "tend to move from one child to another."

---

[1] At the time of trial, Rasheed was two years old and Christina was eleven months old. Custody of these children is not at issue in this appeal.

Dr. Richard Shea, a child psychologist, testified as an expert for the Department. Since he had not interviewed any of the children or Muslimani, he testified by way of hypothetical question. He stated that Stacey is sexually abused and that the relationship might cause short term confusion, insecurity and emotional disturbance in the younger children, which, if untreated, might have long term effects. When asked if it would be best for all the children to stay together with their father, Dr. Shea stated, "If somebody had determined that they are not at risk."

Dr. Paul Mansheim, a psychiatrist who was originally contacted by the Department to interview Muslimani, was Muslimani's expert witness. Dr. Mansheim, who had interviewed Muslimani and all the children, testified that Muslimani is not a pedophile because when he embarked on his relationship with Stacey, he intended to be responsible for her and to marry her. He explained that Muslimani began his relationship with Stacey because he felt compassion for her (her mother was "off gallivanting with Selena") and because he wanted a son and Ruth could no longer have children. He stated that it was not uncommon in Muslim culture for a man to marry a very young woman. Further, Dr. Mansheim testified that Stacey was not sexually abused, that the three girls were not at risk, and that it was in their best interests to remain with Muslimani (as they wished to do). He did admit, however, that Stacey was raised as a daughter by Muslimani, that incestuous fathers tend to move down the line of available children, and that the three girls will be more likely than other girls to accept sex with older men as appropriate.

The trial judge stated that he was "very much impressed" with Dr. Mansheim's testimony even though "there are a few things that I don't agree with."

The Department put on two witnesses in rebuttal. First, Dr. Satar Abdul Ahmadi, a Muslim, testified that it is absolutely forbidden in Muslim culture to marry one's stepdaughter. Second, Selena Johnson, Stacey's sister, testified that Muslimani had sexually assaulted her repeatedly beginning when she was nine years old.

Selena, who left Muslimani's home with her mother Ruth and is now in foster care, testified that Muslimani began to make "passes" at her when she was nine years old, that he would "grab

me on the behind if I was walking past him, or . . . little things . . . [that] I didn't pay much attention to . . . at first." He then began to come into her bedroom at night and would lie beside her rubbing her arm or body. He then began to try to have sex with her and, finally, made her perform oral sex on him. He also performed oral sex on her. She said that he "made it seem like it was my fault . . . [t]hat I was wrong, that I wanted to do it."

Muslimani denied Selena's allegations. He described them as fabrications and attributed them to her mother and to her mother's animosity toward him. He explained that Selena, when she lived with him, shared a bedroom with Stacey and that it would have been impossible for the events Selena described to have occurred without Stacey having been aware of them.

In granting Muslimani custody of the three girls, the trial judge stated that "there is absolutely no evidence before this Court that these three children have ever been abused in any way" and that "we should [not] take children away from a parent on speculation or fear of what possibly could happen in the future when there is no evidence of that." In his final orders dated December 13, 1989, the trial judge found that Samira, Somiah, and Fatina were not neglected and were not "subject to risk of sexual abuse and impairment of mental and bodily functions."

On December 29, 1989, the Department made motions to vacate the orders on the basis of an affidavit in which Dr. Joseph Allen, a psychiatrist who is a member of the same professional group as Dr. Mansheim, swore to the following facts: that he had read the testimony of Dr. Mansheim; that sexual intercourse with a ten or eleven year old girl by a thirty-eight year old man constituted sexual abuse; that a decision as to custody of the three girls "should not be based to any extent upon the testimony of Paul Mansheim, M.D." The trial court denied the motions.

■ Muslimani argues that the motion to reopen the proceeding and admit new evidence should be treated as a motion for a new trial based on after-discovered evidence and, therefore, the Department had to prove that even with the exercise of reasonable diligence, the evidence could not have been secured for use in the trial. *See Odum v. Commonwealth*, 225 Va. 123, 130, 301 S.E.2d 145, 149 (1983). *Odum* does not provide the standard by which a trial court should be guided in considering a motion to reopen a

case regarding the disposition of a child custody case under Code § 16.1-279. Except after sixty days from the date of an order committing a child to the Department of Corrections, a trial court on its own motion may reopen any case disposed of under Code § 16.1-279 and modify or revoke its order. Code § 16.1-289.

The overarching concern in all custody cases is the best interests of the child. *Bailes v. Sours*, 231 Va. 96, 99, 340 S.E.2d 824, 826 (1986). Finality, not the child's best interests, underlies the after-discovered evidence rule. *See Powell v. Commonwealth*, 133 Va. 741, 751, 112 S.E. 657, 660 (1922) ("a failure of justice . . . is not so great an evil as that there should be no certain end to litigation"). Finality in litigation is only one of the factors used in determining a child's best interests. Since circumstances affecting a child's best interests may change periodically, finality is not a paramount consideration. Concerns for finality particularly diminish in comparison to concerns that a child may be "at risk of being abused or neglected by a parent or custodian who has been adjudicated as having abused or neglected another child in the care of the parent or custodian." Code § 16.1-279. Whether a disposition under Code § 16.1-279 should be reopened is, therefore, determined by the child's best interests.

Additionally, the goal of finality was not furthered by the trial court's denial of the Department's motion to reopen because the children remained with Muslimani. The status quo would not be affected unless the court reversed its original decision.

The trial court's order states only that there was "no adequate reason" to vacate its previous order. There was no transcript of any hearing on this motion, and we cannot determine why the trial court chose not to reopen the matter.

Muslimani not only did not dispute but admitted that he had had sexual intercourse with a child no more than eleven years old as to whom he stood *in loco parentis*, an act so offensive to this society's mores that it constitutes a serious criminal offense. *See* Code § 18.2-61(A)(iii); *see also Roe v. Roe*, 228 Va. 722, 727-28, 324 S.E.2d 691, 694 (1985). The affidavit of the psychiatrist filed with the motion to reopen the case directly contradicted and challenged the testimony of Dr. Mansheim, the only evidence upon which the trial court could have relied in awarding Muslimani custody. Admittedly, it remains unexplained why the Department

failed to present the testimony of the other psychiatrist at trial; however, this failure, although an appropriate concern reflecting on the need for finality, has nothing to do with the best interests of these children. The affidavit of the psychiatrist bore directly on the children's best interests, the credibility of the testimony relied upon by the trial court in the original hearing and the correctness of the earlier order. Therefore, the trial court abused its discretion in refusing to reopen the proceeding to take further evidence. Therefore, the trial court's denial of the motion to reopen the case for the presentation of additional evidence is reversed and this matter is remanded for further proceedings consistent with this opinion.

*Reversed and remanded.*

Baker, J., and Willis, J., concurred.