## Richmond

DEBORAH K. GENTRY HUGHES

v.

WILLIAM W. GENTRY

No. 2015-92-2

Decided May 3, 1994

COUNSEL

Thomas F. Coates, III (Coates & Davenport, on brief), for appellant.

Stuart R. Kaplan (Jane Chittom; Catlett & Kaplan; Shuford, Rubin & Gibney, on brief), for appellee.

(Russell E. Allen, guardian *ad litem* for Brandon Gentry, a minor).

OPINION

KOONTZ, J.—Deborah K. Gentry Hughes (Hughes) appeals an order of the Circuit Court of Henrico County transferring custody of her son, Brandon Gentry (Brandon), to William W. Gentry (Gentry), Hughes's former husband and Brandon's natural father. Hughes was awarded custody of Brandon following the couple's separation. Gentry petitioned the court for a change of custody after Hughes and her new husband indicated that they intended to relocate outside Virginia. The chancellor ruled that a change in circumstances warranting a review of custody had occurred and that the best interests of the child required a change of custody.

In this appeal, Hughes argues that the chancellor erred in finding a sufficient change of circumstances and that he further erred in determining that the best interests of the child warranted a change of custody. Hughes also appeals the denial of her post-hearing motion to reconsider based on additional evidence. For the reasons that follow, we affirm the chancellor's rulings.

## I.

## FACTUAL BACKGROUND

Hughes and Gentry married in 1981 and divorced in 1989. The couple had one child, Brandon, and Gentry adopted Hughes's other son, Maynard, during the marriage. After the couple separated, custody of both children was awarded to Hughes, who subsequently remarried. Two daughters were born during this subsequent marriage. Gentry requested and received from the court liberal visitation rights with both Brandon and Maynard. He has subsequently terminated his relationship with Maynard.

The record reflects that following the entry of the final decree of divorce, Hughes and Gentry engaged in an acrimonious and combative exchange of motions and petitions in the courts over matters of visitation, support and custody. In January 1992, Hughes informed Gentry by letter that she and her husband would be relocating out of state "in the near future." Gentry then petitioned the Juvenile and Domestic Relations District Court of Hanover County (where Hughes then resided) for a change of custody. Following a hearing on the motion, a judge of that court ordered a change of custody. Hughes appealed the order of the juvenile court to the Circuit Court of Henrico County, the court

of jurisdiction in the original divorce action.

In a *de novo* hearing, the chancellor heard testimony from the parties, various relatives, other lay witnesses and two expert witnesses. Gentry and his current wife testified that Hughes had interfered with Gentry's visitation with Brandon. Hughes denied these allegations.

Barbara Witherow, LPC (Witherow), testified for Gentry. Witherow indicated that Brandon felt freer to express his emotions for both parents when he resided with his father. William Lordi, M.D. (Lordi), testified for Hughes. Lordi stated that the relocation would not be against Brandon's best interests. Lordi felt that siblings should not be separated. The chancellor also received a report from the court's social worker and heard arguments from the parties and Brandon's guardian *ad litem*.

After receiving recommendations for visitation from the parties and the guardian *ad litem*, the chancellor by letter opinion awarded custody of Brandon, who had resided with his father following the juvenile court hearing, to Gentry. In response to the letter opinion, Hughes filed a motion to reconsider. An order reflecting the ruling of the letter opinion was entered on August 28, 1992. Hughes again moved the court to reconsider its ruling, alleging in a supporting memorandum and affidavit that she was now prepared to bring evidence before that court that Gentry had raped her following their separation. Gentry denied these allegations by affidavit. The chancellor, considering the evidence on the record, denied the motion to reconsider.

## II.

## CHANGE OF CIRCUMSTANCES WARRANTING REVIEW OF CUSTODY

The trial court may "revise and alter such decree concerning the care, custody and maintenance of the children and make a new decree concerning the same, as the circumstances of the parents and the benefit of the children may require." Code § 20-108. In determining whether a change in custody is warranted, the trial court applies a two-part test: (1) whether there has been a change of circumstances since the most recent custody award; and (2) whether such a change would be in the best interests of the child. *Keel v. Keel*, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983). On

appeal, we review the evidence in the light most favorable to the prevailing party below. *Peple v. Peple*, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988). "The trial court's decision, when based upon an *ore tenus* hearing, is entitled to great weight and will not be disturbed unless plainly wrong or without evidence to support it." *Venable v. Venable*, 2 Va. App. 178, 186, 342 S.E.2d 646, 651 (1986).

In acknowledging this standard of review, however, we also recognize that the parent seeking to obtain a transfer of custody bears the burden to show a change in circumstances following the most recent custody award. *See Keel*, 225 Va. at 611, 303 S.E.2d at 921; *Turner v. Turner*, 3 Va. App. 31, 34, 348 S.E.2d 21, 22 (1986). This rule advances the obvious benefits of providing stability in the life of the child whose custody is the subject of the conflict between the parents. *Peple*, 5 Va. App. at 421, 364 S.E.2d at 237.

Here, Hughes contends that the chancellor based his ruling on her impending departure from the state, and that this fact, in itself, does not constitute a change of circumstances warranting a review of custody. We disagree.

It is well settled law that a court may forbid a custodial parent from removing a child from the state without the court's permission, *Carpenter v. Carpenter*, 220 Va. 299, 302, 257 S.E.2d 845, 847 (1979), or it may permit the child to be removed from the state. *Gray v. Gray*, 228 Va. 696, 698-99, 324 S.E.2d 677, 678 (1985); *Simmons v. Simmons*, 1 Va. App. 358, 364, 339 S.E.2d 198, 201 (1986). In making such a determination, the court determines whether the relocation would be in the child's best interest. *Scinaldi v. Scinaldi*, 2 Va. App. 571, 573, 347 S.E.2d 149, 150 (1986). The inescapable inference of *Scinaldi* is that whenever the evidence suggests, as it does here, that the relocation of the custodial parent may not be in the child's best interests, the relocation of the custodial parent constitutes a material change of circumstances. *See Wilson v. Wilson*, 12 Va. App. 1251, 1255, 408 S.E.2d 576, 579 (1991).

Moreover, the record reflects that Hughes's pending relocation was not the sole factor considered by the chancellor in his determination that a change of circumstances had occurred. During the closing argument, the chancellor engaged Gentry's counsel in a

brief dialogue concerning the change in circumstances requirement. From that discussion, it is clear that the chancellor considered not merely the fact of the relocation, but its effect on Brandon. The chancellor also noted that Gentry's remarriage further supported finding a change in circumstances.

Accordingly, we find that the record, when viewed in the light most favorable to the party prevailing below, supports the chancellor's determination that a change in circumstances had occurred sufficient to warrant further consideration and determination of whether a change of custody would be in the best interests of the child.

## III.

### DETERMINATION OF THE "BEST INTERESTS OF THE CHILD"

The second prong of the test found in *Keel*, the best interests of the child, is the greater concern of the two. *Visikides v. Derr*, 3 Va. App. 69, 71, 348 S.E.2d 40, 41 (1986). Hughes contends that the chancellor erred in determining that Brandon's best interests would be served by a change of custody so that he might remain in Virginia with his father. Hughes's principal argument is that Brandon's best interests are not served by separation from his half-siblings.

In support of this argument, Hughes relies on *Hepler v. Hepler* where our Supreme Court said, "Where it is reasonably possible, brothers and sisters of tender years should be reared together, and have the full benefit of natural ties of affection and interest that such association develops." 195 Va. 611, 623, 79 S.E.2d 652, 659 (1954). Hughes urges us to adopt a "compelling cause" test that would give paramount status to the effect of the separation of siblings on a determination of custody.

We agree that the effect of the separation of siblings must be and should be considered by a court during both the initial determination of custody and in subsequent determinations of change of custody. *See Hepler*, 195 Va. at 623, 79 S.E.2d at 659; *Smith v. Pond*, 5 Va. App. 161, 165, 360 S.E.2d 885, 887-88 (1987). Nonetheless, there is no support for the contention that

this consideration is paramount to others.[1] In *Doane v. Doane*, 330 So. 2d 753 (Fla. Dist. Ct. App. 1976), a case cited by Hughes, and in other cases using similar language, it is clear that a "compelling cause" is necessary to separate siblings only where it is not otherwise in the best interests of the individual child to be placed in separate custody. *See Brown v. Brown*, 409 So. 2d 1133, 1134 (Fla. Dist. Ct. App. 1982) ("the principle of non-separation 'is not absolute and is subject to a determination as to what custody arrangement would be best for the (individual) child.'" (citation omitted)); *In re Marriage of Jones*, 309 N.W.2d 457, 461 (Iowa 1981) (court ordinarily tries to keep siblings together, but will not do so if the best interests of the child dictate otherwise). This is the view this Court took in *Smith*, where a third party custody award was overturned because there was no showing that it was in the best interest of the child to be in the custody of the third party, rather than to remain with her parents and siblings. *Smith*, 5 Va. App. at 165, 360 S.E.2d at 887-88.

Having determined that the chancellor did not err in giving no special weight to the effect of separating Brandon from his half-siblings, there remains the question of whether the chancellor erred in his overall determination that a change of custody was in Brandon's best interest. The record shows that each of the experts considered Brandon to be a well adjusted child with a natural affection for both Hughes and Gentry, as well as for their respective spouses. Nonetheless, whereas Lordi stated only that a relocation would not be contrary to Brandon's best interests, Witherow stated unequivocally that Brandon was happier and better able to relate to both Hughes and Gentry when he resided with Gentry. We accord deference to the chancellor in weighing such testimony because he was in a better position to hear and observe the witnesses.

In addition, despite Hughes's assurance that she would assist Gentry in defraying the cost of travel that would be required for

---

[1] We note that while most states list factors to be considered in determining an award of custody similar to those found in Code § 20-107.2, no state specifically includes relationship with siblings among those factors. Rather, the effect of separation of siblings is a factor judicially inferred from the provisions of the statute. *See, e.g., In re Marriage of Kurth*, 438 N.W.2d 852, 854 (Iowa Ct. App. 1989) (referring to the "strong interest in keeping children of broken homes together"). By way of contrast, many states' statutes list separation of siblings as a factor in determining foster care placement. *See, e.g.*, Fla. Stat. Ann. § 39.45 (West 1993); N.M. Stat. Ann. § 32A-4-22 (Michie 1993).

visitation, the record suggests that she has in the past had difficulty abiding by the court-ordered visitation schedule. The chancellor was clearly of the opinion that both Hughes and Gentry were using Brandon as a pawn in their continuing conflict. In his letter opinion, the chancellor renewed his appeal to Hughes and Gentry to put aside their differences for Brandon's sake.

Thus, the chancellor relied both on expert testimony and the past history of the parties in determining, in accord with the provisions of Code § 20-107.2, that Brandon's best interests, notwithstanding the separation from his half-siblings, were served by a transfer of custody from Hughes to Gentry. There being ample evidence in the record to support that decision, we will not supplant the chancellor's judgment with our own. *See Amburn v. Amburn*, 13 Va. App. 661, 664, 414 S.E.2d 847, 849 (1992).

## IV.

## MOTION TO RECONSIDER FOR ADDITIONAL EVIDENCE

Following the unfavorable result, Hughes sought to reopen the question of change of custody, asserting that she wished to present additional evidence showing that Gentry was an unfit parent.[2] We begin by noting that in matters of child custody, "finality [of the custody decision] is only one of the factors used in determining a child's best interests. Since circumstances affecting a child's best interests may change periodically, finality is not a paramount consideration." *Accomack County Dep't of Social Servs. v. Muslimani*, 12 Va. App. 220, 225, 403 S.E.2d 1, 3 (1991). In *Muslimani*, this Court rejected the assertion that a motion to reopen a custody determination for additional evidence should be treated the same as a motion for a new trial in light of after-discovered evidence. We found that the best interests of the child may outweigh the prejudice which results to the opposing party where the moving party has failed to act diligently in discovering evidence or, as in this case, has withheld evidence for personal or tactical reasons. *Id.*

---

[2] Hughes also asserted in her motion that the failure to appoint a guardian *ad litem* for her son Maynard (Brandon's half-brother and Gentry's adoptive son) prejudiced his rights and required reopening of the matter. This claim is not argued on appeal, and, accordingly, we do not address its merits.

■ The decision whether to grant or deny a rehearing is within the trial court's sound judicial discretion. *See Morris v. Morris*, 3 Va. App. 303, 307, 349 S.E.2d 661, 663 (1986). Although the chancellor considered the motion on submitted documents only, he implicitly did so with the benefit of the credibility determinations made during the prior *ore tenus* hearing. Accordingly, the chancellor is owed deference, and we will consider the matter in that light.

Hughes's allegations were unsubstantiated and were denied by Gentry point by point. Although Hughes asserted in her affidavit that she could corroborate her allegations, she failed to do so. Moreover, the motion did not allege the discovery of new evidence not known or accessible to Hughes before the former hearing and pointed out no error upon the face of the record. The burden is on the moving party to show a right to the relief sought. *Holmes v. Holmes*, 7 Va. App. 472, 482, 375 S.E.2d 387, 393 (1988). Accordingly, we cannot say that the chancellor abused his discretion in denying the motion.

For the foregoing reasons, the orders of the circuit court transferring custody of Brandon from Hughes to Gentry and denying the motion to reopen that matter are affirmed.

*Affirmed.*

Willis, J., concurred.

Benton, J., dissenting.

I agree that the evidence proved that the mother's move from Virginia may be a material change in circumstances. *See Wilson v. Wilson*, 12 Va. App. 1251, 1255, 408 S.E.2d 576, 579 (1991). The record did not establish, however, that the mother's move to Wisconsin for economic reasons justified a change in custody because it would be in the best interest of the child. *See Keel v. Keel*, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983).

The trial judge gave no reason for his conclusion that the child's best interest warranted a change in custody. Therefore, this Court is not in the position to review whether the trial judge properly reasoned his way to a permissible conclusion; instead, we are forced to examine the record for evidence upon which the trial judge possibly *could* have properly reasoned his way to a permissi-

ble conclusion. The difference is more than semantic. The Code of Virginia invests the trial judge with the discretion to weigh the relevant factors in determining child custody. *D'Auria v. D'Auria*, 1 Va. App. 455, 461, 340 S.E.2d 164, 168 (1986). If, however, the trial judge does not explain in any fashion the reasoning or factors that led to a particular conclusion, review of the trial judge's decision is limited to this Court's after-the-fact speculation about what the trial judge might have reasoned in arriving at a conclusion. *See Woolley v. Woolley*, 3 Va. App. 337, 344, 349 S.E.2d 422, 426 (1986) ("When . . . the chancellor fails to state any basis for a . . . conclusion, the reviewing court is hindered in its task"). Such a review may ultimately focus on the propriety of a weighing or reasoning process that the trial judge never actually undertook. As a consequence, the effect of the trial judge's failure to place his reasoning on the record is to place the trial judge's decision beyond review.

That result is not what I understand the phrase "sound discretion of the trial judge" to imply. Indeed, were that the result, we could never ascertain if a trial judge had abused his discretion. Any fact in evidence that offered some theoretical support for the decision could be given significant weight by the reviewing court even if the trial judge had ignored that fact in reaching his or her conclusion.

The testimony proved that the child was well adjusted, interacted well with both his parents, and would suffer no harm by relocation to Wisconsin. The trial judge made no finding and stated no view regarding Dr. Lordi's testimony, the child and family psychiatrist who interviewed the child and both parents. The record gives no indication that the trial judge even considered what effect being separated from his siblings might have upon the child.

"Where it is reasonably possible, brothers and sisters of tender years should be reared together, and have the full benefit of natural ties and affection and interest that such association develops." *Hepler v. Hepler*, 195 Va. 611, 623, 79 S.E.2d 652, 659 (1954). Dr. Lordi testified that the child has positive feelings toward both parents, that both parents demonstrate appropriate parenting skills, and that the relocation of the child to Wisconsin would not be harmful to the child. Additionally, however, the psychiatrist testified that the child should not be separated from his brother

and his sisters, with whom he has a very close bond.

No evidence in this record suggests that the best interest of this child required a change in custody. Moreover, nothing in this record suggests that anything in this child's best interest outweighed the harm he will experience from severing the bond with his siblings. As it stands now, we cannot know the trial judge's actual findings or reasoning, and we are left to speculate about the trial judge's findings. I would reverse the decision.

I, therefore, dissent.