COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Annunziata and Agee
Argued at Alexandria, Virginia


ROSA L. CHITTUM, LARRY W. CHITTUM,
 PAMELA CONLEY, F/K/A PAMELA MISKOVSKY AND
 ROXANNE CULLEN

v.   Record No. 0883-02-4

PAULA KAY JOHNSON AND
 CARLTON CONLEY                    MEMORANDUM OPINION[*] BY
                                   JUDGE ROSEMARIE ANNUNZIATA
                                        DECEMBER 31, 2002
CARLTON CONLEY

v.   Record No. 0884-02-4

LARRY CHITTUM, ROSA CHITTUM,
 PAMELA CONLEY, F/K/A PAMELA MISKOVSKY,
 ROXANNE CULLEN AND PAULA KAY JOHNSON


          FROM THE CIRCUIT COURT OF STAFFORD COUNTY
                 James W. Haley, Jr., Judge

          Jon E. Shields (Jon E. Shields, P.C.,
          on brief), for Rosa L. Chittum, Larry W.
          Chittum, Pamela Conley, f/k/a
          Pamela Miskovsky and Roxanne Cullen.

          Paul D. Scanlon for Carlton Conley.

          Kenneth P. Mergenthal for Paula Kay Johnson.


     Rosa and Larry Chittum, Pam Miskovsky and Roxanne Cullen

(collectively the "Chittums")and Carlton Conley appeal the trial

court's order that merged Conley's visitation with the minor

---

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

child C.M.J.C. with that of the Chittums, on the following grounds: 1) the petition filed by Paula Johnson, seeking termination of Conley's visitation, failed to provide sufficient notice of the relief sought and ordered by the court, and further, the petition failed to allege a material change in circumstances, 2) the evidence was insufficient to support a finding that Conley's marriage to Miskovsky and relocation to Buena Vista constituted a material change in circumstances, 3) the evidence was insufficient to establish that a modification of visitation was in the best interests of the child, and 4) the trial court failed to consider all the factors in Code § 20-124.3 in determining the best interests of the child. For the reasons that follow, we reverse.

Background

C.M.J.C. is one of two babies discharged to the wrong biological parents from the University of Virginia hospital in July 1995. Although Kevin Chittum and Whitney Rogers were C.M.J.C's biological parents, the hospital erroneously discharged her to Carlton Conley and Paula Johnson.[1] Johnson and Conley's biological daughter was discharged to Kevin Chittum and

---

[1] In July 1998, Conley received the results of a blood test, which established he was not the biological father of C.M.J.C. Subsequent tests established that Johnson was not the child's biological mother.

Whitney Rogers, both of whom were later killed in a car accident in July 1998.[2]  Kevin Chittum was the son of Rosa and Larry Chittum and brother of Pam Miskovsky and Roxanne Cullen.

Several court orders granted all the parties visitation with C.M.J.C. pursuant to a schedule established by the court. On September 21, 1998, the Greene County Juvenile and Domestic Relations District Court granted custody of C.M.J.C. to Paula Johnson and visitation to Conley.  The order set Conley's visitation at "every other weekend . . . and on Tuesday and Thursday from 8:00 p.m. to 8:30 p.m. . . . [and] other visitation as agreed upon."  The court issued an order on September 2, 1999, amending the previous order and changing Conley's visitation to "every other weekend . . . ."

On January 21, 2000, the Juvenile and Domestic Relations District Court of Stafford County awarded visitation to the Chittums, collectively, on the second weekend of every month and the second week in July.[3]  The order further provided:  "The weekend should be scheduled in odd numbered months . . . on a

---

[2] That child is now being raised by the parents of Whitney Rogers and Kevin Chittum; her custody and visitation are not at issue on appeal.

[3] The court noted that all matters regarding Conley's visitation with the child were transferred to Stafford County and Conley submitted himself to the jurisdiction of the Stafford County Juvenile and Domestic Relations District Court.

weekend not otherwise provided for Carlton Conley and should be taken from the schedule afforded Mr. Conley."[4]

On March 31, 2000, the Stafford County Circuit Court entered a consent order, which appointed Johnson as the child's guardian and adopted the January 21, 2000 order. Accordingly, the court granted the Chittums visitation in accordance with the January 21, 2000 order, from Friday to Sunday on the second weekend of each month and one full week in July.[5]

On April 24, 2001, Conley married Miskovsky. Johnson filed a petition to terminate Conley's visitation on May 16, 2001. After a hearing on Johnson's petition, the court entered an order on March 11, 2002, which combined Conley's visitation with that of the Chittums, effectively reducing Conley's visitation with the child to one weekend each month, and precluding his sole visitation with the child. Conley appeals the order modifying the existing visitation, and the Chittums cross-appeal.

---

[4] The Greene County Juvenile and Domestic Relations District Court issued a schedule for Conley when it granted him visitation in 1998.

[5] This order did not explicitly address Conley's visitation, which was granted initially by the Greene County Juvenile and Domestic Relations District Court.

Analysis

I.  Procedural Defect Claims

Conley and the Chittums contend Johnson's pleading was deficient because it did not seek modification of visitation, the position she adopted at the hearing, and only sought termination of Conley's visitation.  They argue the appeal should not be considered, on the ground Johnson's pleading failed to give proper notice of her claim.  They also argue Johnson failed to allege a material change in circumstances in her petition.  We decline to address these procedural default issues on appeal because Conley and the Chittums present neither argument nor authority in support of these contentions.  See Rule 5A:20(e).  "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration."  Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992).  We thus turn to the substantive issues presented.

II.  Material Change in Circumstances

Conley contends the trial court erred in finding that his marriage to Miskovsky and relocation to Buena Vista constituted a material change in circumstances.  We disagree.

As the party seeking to modify custody, Johnson bore the burden to prove:  (1) there had been a material change of circumstances since the most recent custody award and (2) that a change in custody would be in the best interests of the child.

– 5 –

See Hughes v. Gentry, 18 Va. App. 318, 321, 443 S.E.2d 448, 450-51 (1994) (citing Keel v. Keel, 225 Va. 606, 611, 303 S.E.2d 917, 921 (1983)).  "This rule advances the obvious benefits of providing stability in the life of the child whose custody is the subject of the conflict between the parents."  Hughes, 18 Va. App. at 322, 443 S.E.2d at 451 (citing Peple v. Peple, 5 Va. App. 414, 421, 364 S.E.2d 232, 237 (1988)).

The decision to modify a child custody order is committed to the sound discretion of the trial court.  See Wilson v. Wilson, 18 Va. App. 193, 195, 442 S.E.2d 694, 695-96 (1994). "'The court, in the exercise of its sound discretion, may alter or change custody or the terms of visitation if subsequent events render such action appropriate for the child's welfare.'" Id. (quoting Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986)).  However, if the court does not first find a material change in circumstances, consideration of the "best interests of the child" is barred by the principles of res judicata.  See Hiner v. Hadeed, 15 Va. App. 575, 580, 425 S.E.2d 811, 814 (1993).  "'Whether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence.'"  Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) (citation omitted).  The definition of "change in circumstances" is not limited to negative events that may occur in the home of the custodial parent, but is broad enough to include changes of the

non-custodial parent, such as remarriage. See Keel, 225 Va. at 612, 303 S.E.2d at 921.

At the time the trial court granted Johnson's petition and merged Conley's visitation with that of the Chittums, an April 20, 2001 order from Stafford County governed custody and visitation. The order incorporated the terms of the previous orders giving Conley visitation with C.M.J.C. every other weekend and ordered the Chittums' visitation to conform to the existing schedule for Conley's visitation.

Viewing the evidence in the light most favorable to Johnson, the party prevailing below, together with all reasonable inferences, see Peple, 5 Va. App. at 422, 364 S.E.2d at 237, we cannot conclude the trial court erred in finding that a material change in circumstances occurred between the April 20, 2001 Stafford County order and Johnson's petition to terminate Conley's visitation on May 16, 2001. On January 20, 2002, the court held a hearing on Johnson's petition to terminate Conley's visitation. At the hearing, Conley testified that he lived in Buena Vista. Prior to Conley's testimony, the only evidence before the court was that Conley lived in Greene County. Moreover, it is uncontested that Conley and Miskovsky married after the April 20, 2001 order. Therefore, we find no error in the court's determination that a material change in

circumstances occurred between the existing order of April 20, 2001 and its hearing on Johnson's petition on January 20, 2002.[6]

### III.  Best Interests of the Child

Conley further argues that, even if his marriage and relocation constitute a material change in circumstances, the court erred in finding that a change in visitation was in the best interests of the child.  We agree.

"In matters concerning custody and visitation, the welfare and best interests of the child are the 'primary, paramount, and controlling considerations.'"  Kogon v. Ulerick, 12 Va. App. 595, 596, 405 S.E.2d 441, 442 (1991) (citation omitted).  While the trial court is vested with broad discretion to make the decisions necessary to safeguard and promote the child's best interests, we may set aside its decision if there is no evidence to support it.  Farley v. Farley, 9 Va. App. 326, 327-28, 387 S.E.2d 794, 795 (1990).

---

[6] Conley and the Chittums claim no material change in circumstances existed because the court was aware of the impending marriage of Conley and Miskovsky, as well as his relocation to Buena Vista, when it issued its order at the prior hearing on April 20, 2001.  Indeed, Conley advised the court in March 2001, in a Motion and Affidavit for a Rule to Show Cause, of his marriage to Miskovsky, scheduled for April 24, 2001.  He further advised the court in a memorandum on April 20, 2001 that he had moved to Buena Vista in September 2000.  However, neither the memorandum nor affidavit was admitted into evidence, and the record fails to show that the court considered either document in rendering its decision on April 20, 2001.  Therefore, we must conclude the memorandum and affidavit were not evidence before the court at the time of the last hearing and the marriage and relocation were not among the circumstances underlying the court's previous order.  In short, the evidence before the court at the prior hearing showed that Conley was unmarried and living in Greene County.

In determining the best interests of the child, the trial court must examine numerous factors, including but not limited to:  1) the relationship existing between each parent and child, giving due consideration to the positive involvement with the child's life, and 2) the needs of the child.[7]  Code

[7] Code 20-124.3 provides:

> In determining best interests of a child for purposes of determining custody . . . the court shall consider the following:
>
> 1.  The age and physical and mental condition of the child, giving due consideration to the child's changing developmental needs;
>
> 2.  The age and physical and mental condition of each parent;
>
> 3.  The relationship existing between each parent and each child, giving due consideration to the positive involvement with the child's life, the ability to accurately assess and meet the needs of the child;
>
> 4.  The needs of the child, giving due consideration to other important relationships of the child, including but not limited to siblings, peers and extended family members;
>
> 5.  The role which each parent has played and will play in the future, in the upbringing and care of the child;
>
> 6.  The propensity of each parent to actively support the child's contact and relationship with the other parent, the relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in and resolve disputes regarding matters

§ 20-124.3. In this case, evidence was limited to these two factors. Therefore, we presume the evidentiary facts relating to the remaining factors, as determined in the earlier proceedings, had not changed because Johnson offered no new evidence for the court's consideration. Those facts favored visitation with Conley every other weekend.

In its determination of the best interests of the child, the court adopted Johnson's conclusion that the child was "spending too much time in the car" in order to comply with the visitation schedule, and articulated this conclusion as the basis for its decision. In adopting Johnson's conclusion, the trial court relied on her testimony that the child was spending "three and a half hours" in the car each way on the weekend visitations to Buena Vista. Johnson also testified that the child "doesn't have a life" because she "can't schedule anything on the weekends." Nothing more than these generalizations regarding the child's needs and the purported adverse impact that Conley's marriage and relocation had on her needs were

---

affecting the child;

7. The reasonable preference of the child, if the court deems the child to be of reasonable intelligence, understanding, age and experience to express such a preference;

8. Any history of family abuse as that term is defined in § 16.1-228; and

9. Such other factors as the court deems necessary and proper to the determination.

- 10 -

submitted to the court.  Johnson presented no other evidence that the amount of time C.M.J.C. spent in the car had any adverse impact on her physically, emotionally, psychologically or socially.  Specifically, Johnson failed to identify which, if any, of C.M.J.C's activities were affected by Conley's marriage and relocation, and in what adverse way.  Furthermore, Johnson testified, conversely, that the child "continues to do well and is developing well" despite the circumstances surrounding her birth, custody and visitation.  The guardian ad litem's report presented no evidence suggesting C.M.J.C. was not thriving.

Similarly, no evidence was presented that Conley's changed marital status had any negative effect on the child whatsoever. The only evidence that addressed the nature of the child's relationship with Conley established that she loved him and thought of him as a father.  Furthermore, there was no evidence showing a negative impact on the child emanating from her relationship with Conley's new wife, Pam Miskovsky, an individual with whom the child already had an established relationship and with whom she already enjoyed visitation.

As a matter of law, we find the general statement that "the child spends too much time in the car" as a result of Conley's marriage and relocation is insufficient evidence to warrant modification of a visitation award.  Compare Hughes, 18 Va. App. at 321, 443 S.E.2d at 450-51 (affirming a transfer of custody because it was in the best interests of the child, where child

- 11 -

"was happier and better able to relate" to the parties when living with mother); Sullivan v. Knick, 38 Va. App. 773, 784-85, 568 S.E.2d 430, 435-36 (2002) ("The instant record demonstrates few, if any, benefits to [the child] . . . from relocation hundreds of miles from her father . . . . To the contrary, the evidence clearly establishes that the move would disrupt the positive involvement and influence of father in [the child]'s life, a result at odds with her best interests."); Goldhamer v. Cohen, 31 Va. App. 728, 525 S.E.2d 599 (2000) (finding ample evidence in the record to support modification of visitation on grounds that it was in the best interests of the child, where the child began having problems and the child's psychologist testified that the midweek overnight visitation at issue disrupted the child's schedule for "normal sleeping and waking, homework and other activities").  Accordingly, we reverse the decision of the trial court.

Reversed.