UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present: Judges Humphreys, O'Brien and Senior Judge Bumgardner

TIMOTHY WAYNE WOODDELL, JR.

v.      Record No. 0316-16-3

HARRISONBURG-ROCKINGHAM                    MEMORANDUM OPINION*
 SOCIAL SERVICES DISTRICT                      PER CURIAM
                                             OCTOBER 11, 2016
AMANDA OSBORNE WOODDELL

v.      Record No. 0338-16-3

HARRISONBURG-ROCKINGHAM
 SOCIAL SERVICES DISTRICT


                FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
                           Bruce D. Albertson, Judge

            (Kimberle Hackett Harding, on brief), for appellant Timothy Wayne
            Wooddell, Jr.  Appellant submitting on brief.

            (Tania L. Perez Rodriguez; John Elledge & Assoc PC, on brief), for
            appellant Amanda Osborne Wooddell.  Appellant submitting on
            brief.

            (Kim Van Horn Gutterman, Assistant County Attorney; Lynn
            Svonavec, Guardian *ad litem* for the minor children, on briefs), for
            appellee.  Appellee and Guardian *ad litem* submitting on brief.


        Timothy Wayne Wooddell, Jr. (father) and Amanda Osborne Wooddell (mother) appeal

decisions of the circuit court terminating their parental rights to their minor children, A.W and

C.W., pursuant to Code § 16.1-283(C)(2).  On appeal, father and mother argue the circuit court

erred in finding that the Harrisonburg-Rockingham Social Services District (HRSSD) presented

---

        * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

clear and convincing evidence that terminating their parental rights was in the best interests of the children. We affirm the decisions of the circuit court.

Background

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Father and mother are the biological parents of four children. On December 16, 2014, the four children were removed from the custody of the parents on the ground of abuse and neglect found on the bases of inadequate housing, inadequate supervision, parental substance abuse, and exposure to domestic violence. The two female children, A.W. and C.W., who are the subject of the appeal, were seven years and one year old, respectively, at the time of the removal.

HRSSD became involved with the family in November 2013, based upon a concern that C.W. was born substance exposed to methamphetamine. HRSSD referred the parents to parenting classes and evaluations for substance abuse recovery programs. HRSSD referred C.W. to the Infant Toddler Connection. The family did not follow through with the recommended services.

In September 2014, HRSSD learned one of the children was injured after falling from a moving truck. In addition, A.W. was missing school. HRSSD referred the family to their truancy unit and to Family Education Services (FES) in an effort to prevent removal of the children. FES experienced difficulty reaching the parents and services did not begin until December 2014, when HRSSD received a complaint that methamphetamine was being used in the home while the children were present.

After a home visit in December 2014, a social worker reported that the family home was "completely trashed" with pizza boxes, pill bottles, and other items spread throughout the house. The two-year-old son had a cigarette burn on his face and a mark on his arm. Mother reported he

ran into a burning cigarette and the hot ash fell onto his arm. C.W. was picking up crumbs and trash and putting these items into her mouth. The social worker testified mother appeared to be "very overwhelmed" although only two children were present at the time of the visit.

Mother reported to the social worker that she was taking Percocet, Tramadol, and Xanax. She stated she was "taking more than prescribed." The social worker also saw bath salt containers, baggies containing a white substance, and smoking devices in the home. Mother reported there was domestic violence in the home, and she showed a worker a bruise on her back caused by father hitting her. Mother also said father threw something into the wall, causing a hole in the wall. The HRSSD employee advised mother the children could not remain in the home until it was cleaned. Mother took the children to her parents' home.

On that same date, an HRSSD employee visited father at his place of employment. Father smelled of alcohol, and his speech was slurred. He stated he had consumed alcohol at lunch. Father also reported that he used methamphetamine and "snorted" mother's prescription drugs. He possessed a pill grinder. Father stated a friend had sold methamphetamine from the family's residence. Father asked for help with his substance abuse issues.

The children returned to the home for one day. An HRSSD employee who was providing education to mother stated the two-year-old child put a cigarette butt and lighter in his mouth while he was under mother's supervision. HRSSD again removed the children from the home on December 16, 2014. In order for the children to return home, the parents needed to remedy issues concerning substance abuse, domestic violence, inadequate shelter, and parenting and supervisory skills.

Mother tested positive for methamphetamine use when the children were removed. Mother and father completed psychological and parenting capacity evaluations. Both parents were referred for substance abuse treatment. Mother likely had a substance dependence disorder, and father was

diagnosed with a substance dependence disorder. Mother completed the Wellness and Recovery Decisions Group. However, she attended only two individual counseling sessions and she failed to report to the recommended group counseling sessions. Father did not complete individual or group counseling. In addition, mother and father continued to use drugs and/or alcohol. They both had a number of positive drug tests over a period of about ten months and occasionally failed to appear for drug screening appointments. Mother once refused to provide a urine sample for testing.

On March 10, 2015, a deputy reported to the family residence for a disorderly conduct report. Father was intoxicated, and he struggled with the deputy. Father was convicted of being drunk in public.

Both parents completed some parenting programs and participated in Parenting Education in conjunction with their weekly visitation with the children. During the visits, Andrea Skaflen of FES worked with the parents on creating appropriate boundaries, structure, consistency, and supervision of the children. She testified the parents made some progress in understanding the needs of the children, but they continued to "struggle" to appropriately supervise the children's behavior. Skaflen also expressed concern for mother's ability to care for the children on her own while father worked. In addition, mother was pregnant.

HRSSD referred the parents to the Batterer's Intervention Program. Mother completed the program, and father was participating in the program at the time of the circuit court hearing on February 4, 2016.

Father was charged with assault and battery of a family member, possession of a Schedule III substance, and being drunk in public related to an incident involving mother on August 14, 2015. Father completed twenty of twenty-four domestic violence classes.

Katherine Leeds, a social worker with HRSSD, testified that, initially, the four children were placed in one foster home. The older son was aggressive with A.W., the older daughter.

- 4 -

Eventually, the two sons were placed with relatives and received intensive in-home services. Leeds stated HRSSD wanted to keep the boys together and the girls together when placing the children. Because the boys exhibited more behavioral issues, HRSSD believed a relative placement would provide more long term commitment and stability than a foster home.

The older son exhibited inappropriate sexualized behaviors toward the younger son. For this reason, HRSSD recommended that the two boys not share a bedroom. In October 2015, Skaflen visited the family residence and found it was in better condition than it was when the children were removed. However, the parents had not established separate bedrooms for the sons.

Leeds testified the children are doing well in their respective placements. HRSSD placed A.W. and C.W. in a foster home, and the foster parent is interested in adopting the two girls. Leeds testified she has no concerns about the welfare of A.W. and C.W. in the custody of the foster home. A.W. is functioning well in school, and C.W. is showing no signs of developmental delays. In addition, the foster mother expressed a willingness to continue visitation with the siblings and family members of the daughters. The foster mother stated that A.W. exhibited signs of anxiety after the children had been removed from the parents' custody for about one year. However, she explained that she believed A.W. was aware, at that time, that almost one year had passed since the removal and A.W. appeared to believe the family would have been back together by then.

HRSSD explored placing A.W. and C.W. with maternal grandparents, Mr. and Mrs. Roger Osborne, who were both in their mid-sixties. On December 18, 2014, HRSSD informed Mr. Osborne that he and his wife would have to complete foster parenting training classes in order to be considered for relative placement of the two children. At the time of the circuit court hearing in 2016, the Osbornes were attending these classes. Mrs. Osborne has health issues and undergoes dialysis treatment several times a week. She also has difficulty hearing. An HRSSD employee stated it was hard to communicate with her, and she reported that Mrs. Osborne rarely stood during

the visits with the children. Mrs. Osborne also appeared to be agitated and upset at a visitation when changing the diaper of one of the children.

At the circuit court hearing, Mr. Osborne denied having knowledge of the condition of the family home, the issues with the children, mother's substance abuse problems, and her struggles caring for the children.

HRSSD opposed placing A.W. and C.W. with the Osbornes, concerned that A.W., who is parentified, would parent C.W. because of the health issues of the Osbornes. The foster care social worker testified A.W. acts more like a child and is less focused on C.W. when they are in the foster home.

The circuit court terminated the parental rights of both parents to A.W. and C.W.

Analysis

"Where, as here, the court hears the evidence ore tenus, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

The circuit court terminated the parental rights of the parents pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if

> [t]he parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

The parents assert the circuit court erred in terminating their parental rights because they made progress in resolving the issues that led to the placement of their daughters in foster care.

HRSSD removed the children from the parents' custody based on concerns about inadequate shelter and care of the children, the parents' substance abuse and domestic violence issues, and the parents' insufficient parenting and supervisory skills. The circuit court found there was no improvement in "the substance abuse area" based on the drug tests and the parents' failure to complete counseling. Mother likely had a substance dependence disorder, and father was diagnosed with a substance dependence disorder. Neither parent fully completed the recommended substance abuse programs and counseling services. Father had several drunk in public charges after the children were removed from the home.

In addition, the circuit court found the "domestic violence is not significantly improved," although the parents had attended the Batterer's Intervention Program. Father assaulted mother while they were in the program. Furthermore, although there was improvement with the condition and cleanliness of the family home, the circuit court noted that improvement did not equate to keeping the home safe for the children. In addition, Skaflen observed visitations between the parents and the children and she expressed concern about mother's ability to adequately supervise the children while father worked. Furthermore, mother was expecting a fifth child.

The parents assert it was not in the best interests of the children to place them in two separate homes. While it is true that the effect of the separation of siblings should be considered during a determination of custody, this consideration that is not "paramount to others." Hughes v. Gentry, 18 Va. App. 318, 323-24, 443 S.E.2d 448, 452 (1994). In determining what is in the best interests of the child, a court must evaluate and consider many factors, including the age and physical and mental condition of the child, the age and physical and mental condition of the parent, the relationship existing between the parent and child, the needs of the child, and the role the parent has played, and will play in the future, in the upbringing and care of the child. Barkey v.

Commonwealth, Alexandria Dep't of Human Servs., Div. of Soc. Servs., 2 Va. App. 662, 668-69, 347 S.E.2d 188, 191 (1986).

Here, evidence was presented that the older son was aggressive with the older daughter, and the two sons exhibited numerous behavioral issues. Their issues are being addressed in the relative placement home. Furthermore, the foster mother of A.W. and C.W. stated she intended to ensure the girls maintained contact with their siblings and other family members. The guardian *ad litem* also supported the placement of the four children, stating it was "necessary" and was "not overwhelming" for the caregivers. Under these circumstances, we cannot say the trial court erred in finding that the two placements were in the best interests of the children.

The parents assert the circuit court erred by not placing A.W. and C.W. with relatives. Before terminating a parent's rights, "the court shall give a consideration to granting custody to relatives of the child, including grandparents." Code § 16.1-283(A). HRSSD had "a duty to produce sufficient evidence so that the court may properly determine whether there are relatives willing and suitable to take custody of the child, and to consider such relatives in comparison to other placement options." Logan, 13 Va. App. at 131, 409 S.E.2d at 465.

The evidence showed that Mrs. Osborne, who was sixty-six years old and has several health issues, would have been the primary caretaker of the two children because Mr. Osborne worked outside the home. The foster care worker expressed concern that A.W. would continue to parent C.W. if the children were placed with the Osbornes. In addition, Mrs. Osborne appeared agitated and upset at a visitation when changing the diaper of one of the children, and she was rarely observed standing. Furthermore, Mr. Osborne indicated he had observed no signs that the children were neglected prior to their removal or that mother had substance abuse issues. The circuit court acknowledged the "good intentions" of the Osbornes, however, based on the evidence presented, the

circuit court found they were not an appropriate relative placement for the children. The evidence supports this decision.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax Cty. Dep't of Social Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990). Given that the parents had made no appreciable progress in establishing an adequate home or addressing their substance abuse and domestic violence issues, we hold that the circuit court did not err in finding that the parents had not substantially remedied the conditions that led to the removal of A.W. and C.W.

Considering the totality of the evidence, the circuit court did not err in terminating the parental rights of mother and father to A.W. and C.W and in finding that it was in the children's best interests to do so.

Affirmed.