**Alexandria**

JOHN F. WILSON

v.

GEORGIA ANNE WILSON

No. 0053-93-4

Decided April 5, 1994

COUNSEL

John F. Wilson, *pro se.*

Morgan Brooke-Devlin, for appellee.

OPINION

DUFF, S.J.—Appellant, John Wilson, contends the trial court erred in awarding custody of the minor child to wife, in awarding child support above the guideline amount, in awarding spousal support, in awarding wife a marital share of husband's pension, in allowing her to name a beneficiary for her share of the pension, and in awarding wife attorney's fees.

 On appeal, we view the evidence in the light most favorable to the prevailing party in the trial court, granting to such evidence all reasonable inferences properly deducible therefrom. *Martin v. Pittsylvania County Dep't of Social Servs.*, 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986). Viewing the evidence in light of these principles, we affirm the judgment as to all issues on appeal.

The parties were divorced on March 20, 1991. In the final decree of divorce, the trial court ordered husband to pay $900 per month child support until January 1, 1992, at which time the parties were to review the income of each party to ascertain whether and to what extent an adjustment was needed. The record indicates that on January 1, 1992, after one of the two daughters became emancipated, appellant reduced his child support payment to $500. The parties thereafter appeared before the court on wife's February 10, 1992 petition for child and spousal support and on husband's March 1992 petition for a change in custody.

## CUSTODY

The authority vested in a trial court to decide issues concerning the care, custody, support and maintenance of the minor children, the visitation rights of the non-custodial parent, and the extent to which those rights and responsibilities shall be apportioned between estranged parents is a matter of judicial discretion which courts must exercise with the welfare of the children as the paramount consideration.

\* \* \* \* \* \* \*

Once a court has ruled on matters relating to the custody and care of minor children, and visitation rights of the non-custodial parent, the court retains jurisdiction throughout the minority status of the child involved. The court, in the exercise of its sound discretion, may alter or change custody or the terms of visitation when subsequent events render such action appropriate.

*Eichelberger v. Eichelberger*, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986).

A trial court, in determining whether a change of custody should be made, must apply a two-pronged test: (1) whether there has been a change in circumstances since the most recent custody award; and (2) whether a change in custody would be in the best interests of the child. Whether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence.

*Viskides v. Derr*, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986) (citations omitted); *see also* Code § 20-108.

In its December 1992 order, the trial court noted that it considered all the factors in Code § 20-107.2. Indeed, the record is replete with findings as to the enumerated factors. Moreover, the chancellor's findings and determinations regarding the maturity and judgment of the minor child, whom the court interviewed *in camera*, and the best interests of the minor child convince us beyond question that the trial court did not abuse its discretion.

## CHILD SUPPORT

■ "When the chancellor applies Code § 20-108.2 . . . it is assumed that the court acted reasonably and the burden rests upon the challenging party to show to the contrary." *Conway v. Conway*, 10 Va. App. 653, 658, 395 S.E.2d 464, 467 (1990).

The procedure to be followed in calculating child support was articulated in *Richardson v. Richardson*, 12 Va. App. 18, 401 S.E.2d 894 (1991).

"The starting point for a trial court in determining the monthly child support obligation of a party is the amount as computed by the schedule found in Code § 20-108.2(B). This amount is determined according to a schedule that varies according to the combined gross income of the parties and the number of children involved. No additions or subtractions from the gross income, as defined in Code § 20-108.2(C), . . . may be made *before* this figure is determined. However, *after* determining the presumptive amount of support according to the schedule, the trial court may adjust the amount based on the factors found in Code §§ 20-107.2 and 20-108.1. Deviations from the presumptive support obligation must be supported by written findings which state why the application of the guidelines in the particular case would be unjust or inappropriate." *Id.* at 21, 401 S.E.2d at 896.

*Mayers v. Mayers*, 15 Va. App. 587, 591-92, 425 S.E.2d 808, 810-11 (1993).

At the time of the hearing, appellant's income was $101,000 (or 64.5% of the parties' combined income) and appellee's income was $55,000 (or 35.5%), resulting in a presumptively correct guideline figure for monthly support of $1,318. Appellant's share or contribution would have been $850 per month. Noting his finding that appellant's share was too low, the chancellor explained that "[t]heir standard of living as proved by all the testimony is that these people have taken great pride in giving their children a lot of the better things in life. Both people are healthy, educated and enjoying a good income."

In the December 1992 order, the chancellor explained that the wife "succeeded in rebutting the presumption" that $850 was the

just amount and found that the guideline figure was unjust. He wrote:

> All factors enumerated in 20-108.1 were carefully considered by the Court and testimony was received which pertained directly to the age of the child (14½ yrs.), the incomes of the parents as represented to the Court, . . . the educational and employment histories, the *standard of living established during the marriage of the parties which was found to include among other things, horseback riding for the child, vacations, travel to visit relatives on the West Coast, and ample income for the support of the family as well as the ability to amass significant savings*, the custody of the child, which was awarded to the Complainant, the fact that the child is 14 and ½, that *the Complainant provides health care for the child*, the provisions made with regard to the marital property under Section 20.107.3 [sic], *the earning capacity, obligations, need, and financial resources of each parent, and the contributions, monetary and nonmonetary, of each to the well-being of the family, and the needs of the child.*
>
> The Court also took notice of the fact that the *Respondent is voluntarily depositing the sum of $811 per month ($10,572 per year) in a retirement savings plan and that he has a woman residing with him sixty per-cent of the time, to whom he is not married or related and from whom he does not require any financial contribution towards living expenses. It was also noted that the Respondent placed a $40,000 second mortgage on his home with a amortization period of three years.*

The chancellor explained in detail his reasons for deviating above the presumptively correct amount, and his explanations are based on relevant statutory factors, including the financial resources and obligations of the parties and the standard of living of the child.

The chancellor's written findings provide ample support for his determination that wife rebutted the presumptive amount. Therefore, we affirm the award of child support.

## SPOUSAL SUPPORT

█ "The determination whether a spouse is entitled to support, and[,] if so[,] how much, is a matter within the discretion of the court and will not be disturbed on appeal unless it is clear that some injustice has been done." *Dukelow v. Dukelow*, 2 Va. App. 21, 27, 341 S.E.2d 208, 211 (1986). "The judgment of the trial court is presumed correct and we may not disturb its ruling if there is credible evidence to support it." *Steinberg v. Steinberg*, 11 Va. App. 323, 329, 398 S.E.2d 507, 510 (1990).

Appellant earns $46,000 per year more than appellee. Moreover, the chancellor stated that he considered the relevant statutory factors and present circumstances of the parties in determining the award. There was evidence before the court relating to the earning capacity, obligations, needs and financial resources of the parties as well as such other factors as were necessary to consider the equities of the parties. In fact, the chancellor reduced appellant's spousal support payments by $50 per month based ostensibly on appellant's pay reduction.

As to wife's fault in leaving husband, that issue was settled in the March 1991 final decree. The doctrine of res judicata bars an appeal of a spousal support award on the sole ground that the award was invalid because the spouse was guilty of misconduct. That issue was resolved in the prior hearing which produced the divorce decree and from which the appellant did not file a timely notice of appeal. *See Hall v. Hall*, 9 Va. App. 426, 428, 388 S.E.2d 669, 670 (1990).

Therefore, we affirm the chancellor's award of spousal support and find such award supported by credible evidence.

## THE PENSION

Appellant's argument that the trial court gave wife an interest in husband's future pension payments is without merit. Under Code § 20-107.3, pension benefits accrued *after* the parties are divorced are not marital property. The document entitled "Amendment to Final Decree of Divorce" explained that wife would receive "30% of any Federal Reserve pension as may be accrued for employment at the Federal Reserve Board in any period following December 1, 1992." This document was not signed and, thus, is not a part of the official record signed by the court.

Although that document may have been a proposed order tendered by a party, it is of no legal significance unless signed by the chancellor. Because it was not signed, it is a nullity and does not affect our determination of this issue.

Appellant's argument that appellee may not name a beneficiary is also without merit. Appellee's counsel represented to the chancellor that the pension plan required that wife name a beneficiary to receive her thirty percent share should she predecease appellant. Logically, the plan also allows appellant to name a beneficiary for his seventy percent share of the pension benefits accrued during the marriage. The thirty percent awarded to wife is her property even though she cannot receive it until husband receives his share. *See* Code § 20-107.3(G).[1]

Additionally,

> [t]he court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to . . . .

> Modify any order entered in a case filed on or after July 1, 1982, intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits pursuant to the United States Internal Revenue Code or other applicable federal laws, only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

---

[1] That section states:

The court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time. The court may order direct payment of such percentage of the marital share by direct assignment to a party from the employer trustee, plan administrator or other holder of the benefits. However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed fifty percent of the marital share of the cash benefits actually received by the party against whom such award is made. "Marital share" means that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent.

Code § 20-107.3(K)(4).

Under federal law, qualified domestic relations orders are an exception to ERISA's proscription against alienation and assignment of pension benefits. "The term 'qualified domestic relations order' means a domestic relations order—(i) which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan, and (ii) with respect to which the requirements of paragraphs (2) and (3) are met." 26 U.S.C. § 414(p)(1)(A). "The term 'domestic relations order' means any judgment, decree, or order . . . which—(i) relates to the provision of child support, alimony payments, or marital property rights to a spouse, former spouse, child, or other dependent of a participant, and (ii) is made pursuant to a State domestic relations law." 26 U.S.C. § 414(p)(1)(B).

Paragraph two in § 414 requires that the "domestic relations order"

> clearly specifies (A) the name and the last known mailing address (if any) of the participant and the name and mailing address of each alternate payee covered by the order, (B) the amount or percentage of the participant's benefits to be paid by the plan to each such alternate payee, or the manner in which such amount or percentage is to be determined, (C) the number of payments or period to which such order applies, and (D) each plan to which such order applies.

"A domestic relations order meets the requirements of this paragraph only if such order—(A) does not require a plan to provide any type or form of benefit, or any option, not otherwise provided under the plan [or] (B) does not require the plan to provide increased benefits." 26 U.S.C. § 414(p)(3).

Here, the Qualified Domestic Relations Order (QDRO) does not purport to require husband's pension plan to provide any form of benefits not otherwise provided. The chancellor carefully explained his intention that the order conform to QDROs under federal and state law. The chancellor properly exercised his authority in ordering husband to cooperate in assuring that the pension plan administrator had all of the required data necessary to assure payment to wife, the alternate payee, of her thirty percent share of

the pension.

Therefore, we affirm the trial court's order directing husband to allow wife to name a beneficiary for her thirty percent awarded share of husband's pension.[2]

## ATTORNEY'S FEES

■ "An award of attorney fees is discretionary with the court after considering the circumstances and equities of the entire case and is reviewable only for an abuse of discretion." *Gamer v. Gamer*, 16 Va. App. 335, 346, 429 S.E.2d 618, 626 (1993). " '[T]he key to a proper award of counsel fees [is the] reasonableness under all of the circumstances . . . . Although evidence of time expended by counsel and the charges made to the client is the preferred basis upon which a trial judge can formulate a reasonable award, it is not the only basis.' " *Davis v. Davis*, 8 Va. App. 12, 17, 377 S.E.2d 640, 643 (1989) (quoting *McGinnis v. McGinnis*, 1 Va. App. 272, 277, 338 S.E.2d 159, 162 (1985)).

Appellee's exhibit 1 stated that wife's legal fees were $610 per month. Following husband's decision to reduce child support payments in January 1992, wife filed her petition for support in February 1992, and husband filed his petition for a change in custody in March 1992. Trial did not commence until September 2, 1992.

Based on the amount of time this case has lingered in the courts and the number of issues being contested, the award of $2,250 in attorney's fees is reasonable. Therefore, we affirm the chancellor's award of attorney's fees and find that such award was not an abuse of discretion.

Accordingly, the trial court's rulings on all issues are

*Affirmed.*

Willis, J., and Fitzpatrick, J., concurred.

---

[2] We neither express nor imply any opinion regarding the rights of such beneficiary based upon future contingencies. Our opinion is limited to the court's authority to order the procedural steps necessary to satisfy the requirements for a valid QDRO.