COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Senior Judge Duff
Argued at Alexandria, Virginia


JOHN F. WILSON
                                          OPINION BY
v.   Record No. 1743-96-4       JUDGE ROSEMARIE ANNUNZIATA
                                        NOVEMBER 4, 1997
GEORGIA ANNE WILSON


          FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
                  Paul F. Sheridan, Judge

        John F. Wilson, pro se.

        No brief or argument for appellee.



     Husband, John F. Wilson, and wife, Georgia Anne Wilson, were

divorced by final decree entered in March 1991.  Husband appeals

the trial court's decision to enter a Qualified Domestic

Relations Order (QDRO) amending the final decree of divorce.  He

appeals a separate order requiring him to pay past due child

support and argues that he should be granted restitution for

amounts he overpaid.  Husband further contends that the trial

court erred (1) in finding that it had jurisdiction to hear

wife's petition for an award of attorney's fees incurred on a

previous appeal to this Court; and (2) in requiring him to verify

to the court his income for the years 1992 through 1994.  For the

reasons set forth below, we affirm in part and reverse in part.

                        I. ENTRY OF QDRO

     The final decree of divorce entered in March 1991 provided,

in part:

          [Husband] will pay thirty percent (30%) of
          the marital share of his Federal Reserve

> pension each month if, as and when he begins receiving the pension. Marital share is defined as that portion of the total interest, the right to which was earned during the marriage and before the last separation and is represented by the fraction having a numerator of 16 (representing the years during the marriage which [husband's] service was credited toward his pension) and a denominator (T), presently unascertained, to reflect the total number of years to be credited towards [husband's] retirement. The complete formula is .30 x 16/T x pension.

After the divorce, husband resigned from the Federal Reserve. The Qualified Domestic Relations Order (QDRO) outlined in the final decree did not qualify as a QDRO under federal law and, as such, did not effectuate the terms of the final decree with respect to husband's pension. Accordingly, in December 1992, the trial court entered an order which provided, in part:

> [T]he pension benefits awarded to [wife] in the Final Decree are her property in which she has sole ownership rights and as such she is entitled to designate beneficiaries. [Husband] is ordered to agree to the amendments to the Final Decree of Divorce necessary to have it qualify as a valid Qualified Domestic Relations Order (QDRO) in accordance with the requirements of the Federal Reserve and to promptly sign any documents which are necessary to effect same.

Pursuant to that order, wife presented a proposed QDRO for husband's signature at the December 1992 hearing.

Subsection e of the proposed QDRO defined wife's share of husband's pension according to the formula set forth in the final decree. By handwritten amendment, however, the terms of subsection e were modified to provide that wife would receive

- 2 -

"30% of any Federal Reserve pension as may be accrued from employment at the Federal Reserve Board in any period following December 1, 1992." The handwritten amendments were initialled by husband, wife and wife's attorney. The amended version of the QDRO was signed by both parties but was not dated, and it was not entered by the court. Husband attached an objection to the amended QDRO, complaining of certain provisions unrelated to this appeal. No objection to the amendment of subsection e was attached.

A "clean" copy of the amended QDRO was never entered. On March 5, 1993, wife's counsel submitted the amended QDRO under letter to the trial judge, requesting that the court enter it "in the interest of having a complete record." Counsel stated that if she was later able to achieve a "clean, signed copy," she would forward it to the court. Husband responded by letter, stating that he had intended to attach a statement of objections to the amended QDRO and that the signatures on the draft were "contingent on full implementation" of certain "adjustments" to be made on the "clean" copy. Husband also submitted an affidavit of his former counsel, which stated, in part, that wife's attorney was supposed to have prepared a "clean" copy of the amended QDRO to which husband would have attached objections before signing and submitting the document to the court. Meanwhile, husband appealed the trial court's December 1992 order requiring him to effectuate a QDRO which would comply with

federal law.  In that appeal, husband argued, inter alia, that the amended QDRO improperly provided wife an interest in his future pension payments.  Because the proposed QDRO was "not signed and, thus, [was] not a part of the official record signed by the court," this Court considered it a "nullity" and refused to rule on husband's complaint.  Wilson v. Wilson, 18 Va. App. 193, 198-99, 442 S.E.2d 694, 697 (1994).[1]

In February 1996, wife petitioned the trial court to compel husband to sign the amended QDRO.  The record contains a typewritten version of the QDRO, which incorporated the handwritten amendments to subsection e described above.  The trial court signed that version in March 1996, noting, "this typed order is a copy of another version with handwritten parts and attached signatures."  Neither party signed that version of the QDRO.

The final, typewritten version of the QDRO from which this appeal arises, also incorporated the contested language providing that wife would receive "30% of any Federal Reserve pension as may be accrued from employment at the Federal Reserve Board in any period following December 1, 1992."  That version was signed by husband on February 29, 1996, and by husband's attorney the following day.

At a June 1996 hearing for entry of the amended QDRO, the

[1]This Court affirmed the procedural steps the trial court ordered to satisfy the requirements for a valid QDRO under federal law.  Id. at 199-201, 442 S.E.2d at 697-99.

parties and the court agreed that the court had no authority to award wife a portion of husband's pension benefits accruing after the parties' divorce. However, wife's counsel represented to the court the parties' intention to modify the QDRO and argued that husband agreed to the inclusion of the provision at issue. Husband's counsel represented to the court his understanding that husband had made no such agreement. He contended that he and husband had signed the final version of the QDRO on February 29, 1996, because he mistakenly believed that this Court had previously decided the issue.

The trial court took no evidence but found that the provision at issue was "a product of an agreement which included many interchangeable offers and acceptances." The court, therefore, entered the final version of the QDRO the subject of this appeal, on June 14, 1996. Husband noted his objection to the language in subsection e which would effectuate a distribution of separate property; he also objected to the court's "interpretation of this as an agreement that cannot be retracted." The jurisdiction of the court to enter orders effectuating and enforcing its equitable distribution order entered pursuant to Code § 20-107.3 is limited. Equitable distribution orders become final within twenty-one days of entry. See Rule 1:1; see also Fahey v. Fahey, 24 Va. App. 254, 256, 481 S.E.2d 496, 497 (1997). Thereafter, the court's power to modify such orders is governed by statute. Under Code § 20-107.3(K)(4),

an equitable distribution order "intended to affect or divide any pension or retirement benefits pursuant to . . . federal laws . . . [may be modified by subsequent order] only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order."  (Emphasis added). See Fahey, 24 Va. App. at 257, 481 S.E.2d at 497.  Guided by the dictates of this statute, we find the trial court was without authority to substantively modify its original order equitably distributing husband's pension benefits, irrespective of any agreement by the parties to the contrary.[2]  The jurisdiction of the court cannot be established by consent.  Rogers v. Damron, 23 Va. App. 708, 714, 479 S.E.2d 540, 541 (1997).  We accordingly reverse the entry of the amended QDRO on June 14, 1996, and direct the trial court to decree distribution of the pension benefits pursuant to its original decree and consistent with this Court's decision in Wilson v. Wilson, 18 Va. App. 193, 198-201, 442 S.E.2d 694, 697-99 (1994).

## II. CHILD SUPPORT

The trial court's December 1992 order required husband to pay wife $950 per month for the support of the parties' minor child.  The order directed that payment begin in August 1992 and "be payable directly to [wife] on the first of each month

---

[2]Because we decide this issue on jurisdictional grounds, it is unnecessary to decide whether the parties had reached agreement to modify the order as wife contends.

thereafter in accordance with Section 20-107.2."  At the time of the court's order, Code § 20-107.2 read, in part:

> [U]pon decreeing a divorce . . . the court may make such further decree as it shall deem expedient concerning the custody and support of the minor children of the parties . . . . The court may also order that support be paid for any child of the parties who is (i) a full-time high school student, (ii) not self-supporting and (iii) living in the home of the parent seeking or receiving such child support until such child reaches the age of nineteen or graduates from high school, whichever first occurs.

Husband stopped paying his child support obligation upon his child's graduation from high school, approximately five months before her eighteenth birthday.  Wife petitioned the court to order husband to pay support for the months prior to the child's eighteenth birthday.  Citing the fact that the child remained a minor until her eighteenth birthday, the court found that husband's duty to support continued until that time and ordered husband to pay $5,100 in back child support.

Husband contends that his support obligation under the December 1992 order is governed by former Code § 20-107.2 and that the court's 1996 order was, in effect, an improper, retroactive modification of the 1992 order.  This argument misconstrues the trial court's finding.  The trial court interpreted former Code § 20-107.2 and found husband's support obligation did not terminate upon the child's graduation from high school.  In so finding, the court simply interpreted its prior order; it did not retroactively modify it.  The issue we

address, therefore, is whether the court properly interpreted former Code § 20-107.2. We find that it did.

Husband argues that former Code § 20-107.2 "very plainly means that a support obligation terminates if a child graduates from high school prior to reaching age nineteen." We agree, but only if that child is then eighteen years of age.

The provisions at issue must be construed in context with the statutory scheme providing for child support. Both parents are legally required by statute to support and maintain their <u>minor</u> children. Code §§ 20-61, 20-107.2, and 20-108.2; <u>Commonwealth ex rel. Gray v. Johnson</u>, 7 Va. App. 614, 622, 376 S.E.2d 787, 791 (1989). Former Code § 20-107.2 (now codified at § 20-124.2), granted the trial court discretion to order support for the minor children of the parties. <u>In addition</u>, under former Code § 20-107.2, the court could grant support "for any child of the parties who is (i) a full-time high school student, (ii) not self-supporting and (iii) living in the home of the parent seeking or receiving such child support until such child reaches the age of nineteen or graduates from high school, whichever first occurs." This latter provision extended the court's authority to award support for minor children to allow it to award support for eighteen-year-old children still in high school, living at home, and not self-supporting.[3] That provision

---

[3]The present version of Code § 20-124.2(C) requires that support shall continue to be paid for any such child over the age of eighteen.

did not terminate the authority of the court to award support for minor children who had graduated from high school. Accordingly, the trial court's order on this issue is affirmed.

### III. RESTITUTION

Husband argues that this Court should grant him restitution of the child support he paid pursuant to the trial court's order. In light of our decision with respect to husband's continuing child support obligation, this issue is moot, and, in any event, the issue is without merit. Cf. Reid v. Reid, 245 Va. 409, 415, 429 S.E.2d 208, 211 (1993) (trial court has no statutory or inherent authority to order restitution of spousal support paid pursuant to erroneous order).

### IV. FEES

Wife requested the trial court to award her attorney's fees she incurred defending husband's former appeal to this Court. On that appeal, we affirmed the trial court on all counts, and our mandate directed that husband pay to wife "damages according to law." We subsequently denied husband's petition for rehearing en banc, and the Supreme Court denied husband's petition for appeal. The record contains no specific remand, from either this Court or the Supreme Court, with particularized instructions to the trial court to award attorney's fees incurred on appeal. Accordingly, the trial court's conclusion that it had jurisdiction to do so is erroneous and must be reversed. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 692-95, 479 S.E.2d 98, 99-100 (1996).

### V. VERIFICATION OF INCOME

Wife raised three issues in her pleadings giving rise to the

June 1996 hearing: (1) attorney's fees incurred defending husband's prior appeal; (2) husband's failure to sign the QDRO; and (3) husband's termination of child support payments upon the child's graduation from high school. At that hearing, wife's counsel represented to the court her belief that husband had previously misrepresented to the court his income for the years 1992-1994. Counsel stated that she had issued a request for production of documents, seeking husband's income tax returns, but that husband had refused to comply. Counsel requested that the court compel husband to verify his income for those years.

Husband's counsel complained that he was "surprised" by wife's request, but the court granted it. The court stated,

> To the extent that a party in litigation isn't 100 . . . percent right, that's not a problem. That's in the realm of human variations, but to the extent that anybody had, in large dramatic differences, misled the process that we hope is a system of justice, then the system ought to have an alert review of that, and to the extent that this Court was told something untrue, I want to satisfy myself on that.

The court ordered husband to provide documentation of his income directly to the court at the subsequent hearing on wife's request for appellate attorney's fees. We hold that the trial court erred.

> Relief of any type will only be granted when a party specifically requests the relief in a pleading filed in the proper court. It is firmly established that no court can base its judgment or decree upon facts not alleged or upon a right which has not been pleaded and claimed. "Pleadings are as essential as proof, and no relief should be granted that

does not substantially accord with the case as made in the pleading."  "The office of pleadings is to give notice to the opposing party of the nature and character of the claim, without which the most rudimentary due process safeguards would be denied."

Hur v. DCSE ex rel. Klopp, 13 Va. App. 54, 62, 409 S.E.2d 454, 459 (1991) (citations omitted); see also Boyd v. Boyd, 2 Va. App. 16, 18-19, 340 S.E.2d 578, 580 (1986); Ted Lansing Supply Co. v. Royal Aluminum & Const. Corp., 221 Va. 1139, 1141, 277 S.E.2d 228, 229-30 (1981); Potts v. Mathieson Alkali Works, 165 Va. 196, 207, 181 S.E. 521, 525 (1935).  In the absence of a pleading in the record placing the issue of husband's income verification for the years 1992 through 1994 before the court, the court's order that husband produce documents to verify his income must be reversed.  See Hur, 13 Va. App. at 63, 409 S.E.2d at 459.

Affirmed in part,
reversed in part,
and remanded.

Benton, J., concurring and dissenting.

I concur in Parts I, II, III, and V of the majority opinion. With all due respect, however, I dissent from Part IV, in which the majority holds that O'Loughlin v. O'Loughlin, 23 Va. App. 690, 479 S.E.2d 98 (1996), decided that a circuit court judge lacked jurisdiction to award attorney's fees following an appeal. Although O'Loughlin states that the question presented was "whether, absent an order from the Court of Appeals specifically remanding the issue of attorney's fees incurred on appeal, a trial court has jurisdiction to award such fees," id. at 691, 479 S.E.2d at 98, I do not read the opinion to address the question of the trial judge's jurisdiction to award fees.  The opinion merely holds "that a specific remand for attorney's fees is required" before the trial judge may assess attorney's fees for services rendered on appeal.  Id.

> O'Loughlin appears to be based on the following analysis:
> The rationale for the appellate court being the proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal is clear.  The appellate court has the opportunity to view the record in its entirety and determine whether the appeal is frivolous or whether other reasons exist for requiring additional payment.

Id. at 695, 479 S.E.2d at 100 (footnote omitted).  I disagree with that conclusion and with what I believe to be the O'Loughlin holding -- that the trial judge is divested of the right to exercise discretion to award attorney's fees unless the mandate

returned to the circuit court following an appeal specifically remands the issue. I would hold that Code §§ 20-103, 20-79, and 20-99 provide independent authority for a circuit court judge to award attorney's fees. That authority, specifically conferred by the General Assembly, is not eliminated by a mandate from this Court implementing an opinion that does not address attorney's fees.

The context in which the fee request arose in this case is not atypical. During the initial proceeding in the circuit court, the trial judge awarded a divorce and other relief, including attorney's fees, to the wife. The husband appealed to this Court from the divorce decree and raised several issues. In response to that appeal and as part of her request for relief, the wife requested this Court to affirm the judgment and award her attorney's fees for the appeal. Although this Court affirmed the ruling of the trial judge in all aspects, this Court failed to address the wife's request for attorney's fees for the appellate services provided by her counsel. The husband then filed a further appeal to the Supreme Court. The Supreme Court dismissed the husband's petition for appeal and thereby affirmed the ruling of the trial judge. However, the Supreme Court also failed to act upon the wife's request for attorney's fees for the appellate services of her counsel. As has been the usual practice in the Commonwealth, the wife sought an award of attorney's fees when the mandate was returned to the circuit

court ending the husband's appeals.  See, e.g., <u>Bandas v. Bandas</u>, 32 Va. Cir. 285 (1993) (Circuit Court of the City of Richmond); <u>Adams v. Adams</u>, Chancery No. 90000011 (1994) (Circuit Court of Augusta County).  The trial judge awarded her attorney's fees for the appellate services of her counsel.

Attorney's fees have long been considered a cost necessary to enable a spouse or child to maintain a suit for support.  <u>See, e.g.</u>, <u>Carswell v. Masterson</u>, 224 Va. 329, 331, 295 S.E.2d 899, 901 (1982); <u>Ingram v. Ingram</u>, 217 Va. 27, 29, 225 S.E.2d 362, 364 (1976); <u>McKeel v. McKeel</u>, 185 Va. 108, 116-17, 37 S.E.2d 746, 750-51 (1946); <u>McClaugherty v. McClaugherty</u>, 180 Va. 51, 69, 21 S.E.2d 761, 768 (1942); <u>Heflin v. Heflin</u>, 177 Va. 385, 399-400, 14 S.E.2d 317, 322 (1941).  By statute, the legislature has provided for attorney's fees as follows:

> In suits for divorce . . . , the court having jurisdiction of the matter may, at any time pending a suit pursuant to this chapter, in the discretion of such court, make any order that may be proper (i) to compel a spouse to pay any sums necessary for the maintenance and support of the petitioning spouse, including an order that the other spouse provide health care coverage for the petitioning spouse, unless it is shown that such coverage cannot be obtained, (ii) <u>to enable such spouse to carry on the suit</u> . . . .

Code § 20-103(A) (emphasis added).  This statute allows an award of attorney's fees in the trial judge's discretion.  <u>See</u> <u>Wilkerson v. Wilkerson</u>, 214 Va. 395, 398, 200 S.E.2d 581, 584 (1973); <u>Rowlee v. Rowlee</u>, 211 Va. 689, 690, 179 S.E.2d 461, 462

(1971).

> In addition, Code § 20-79(b) provides as follows:
> In any suit for divorce, the court in which the suit is instituted or pending, when either party to the proceedings so requests, shall provide in its decree for the maintenance, support, care or custody of the child or children in accordance with Chapter 6.1 (§ 20-124.1 et. seq.), support and maintenance for the spouse, if the same be sought, and counsel fees and other costs, if in the judgment of the court any or all of the foregoing should be so decreed.

That statute also gives the circuit court judge discretionary authority to award attorney's fees. See Stratton v. Stratton, 16 Va. App. 878, 884, 433 S.E.2d 920, 923 (1993); Alphin v. Alphin, 15 Va. App. 395, 406, 424 S.E.2d 572, 578 (1992).

Furthermore, "[c]osts may be awarded to either party as equity and justice may require." Code § 20-99(5). This statute likewise authorizes an award of attorney's fees, if necessary, as the cost of enabling a spouse to carry on the suit. See D'Auria v. D'Auria, 1 Va. App. 455, 461, 340 S.E.2d 164, 167 (1986).

When the legislature enacted Code §§ 20-79, 20-99, and 20-103, it clearly intended to protect the ability of an eligible spouse to obtain fees for that spouse's legal counsel. The need for attorney's fees is just as compelling when a spouse has been required to secure the services of counsel to defend on appeal a judgment in that spouse's favor. To enable judges to respond adequately to the needs of spouses, the legislature gave broad discretion to judges to award attorney's fees and did not limit

- 16 -

in a strict manner the time in which attorney's fees could be awarded. The only statutory requirement is that the suit must be pending. Indeed, one of the statutory provisions allows the trial judge discretion to award attorney's fees and costs "at any time" in a pending suit for divorce. Code § 20-103. O'Loughlin does not hold that the divorce suit is not pending when the mandate has issued and is before the circuit court on remand. It also does not address the authority of the circuit court judge to award attorney's fees pursuant to Code § 20-103 while the suit is still pending on remand.

Generally, when a trial judge has discretion to award attorney's fees, that discretion may be invoked after an appeal has resolved the merits of the case. See White v. New Hampshire Dep't of Employment Sec., 455 U.S. 445 (1982). A request for attorney's fees and costs has traditionally been deemed to be collateral to the judgment because the request seeks a benefit as a consequence of the judgment. See id. at 451-52; see also Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 168-69 (1939). Thus, a trial judge's award of attorney's fees under Code § 20-103 for services rendered on appeal is collateral to the remand order contained in the mandate. Accord Wheeler v. Wheeler, 636 A.2d 888, 890 (Del. 1993) (holding that trial judge's statutory power "to award attorney's fees following an appeal is not dependent upon a remand . . . for that purpose"); Dahnke v. Dahnke, 571 N.E.2d 1278, 1282 (Ind. Ct. App. 1991)

(holding that appellate attorney's fees were incurred during the divorce proceedings and were awardable by the trial judge).  As long as the remand order is still pending, Code § 20-103(A) is statutory authority, independent of the mandate, that empowers the judge to award attorney's fees.  Accord Tolman v. Tolman, 461 P.2d 433, 435 (Idaho 1969) (stating that a trial judge's statutory authority to award attorney's fees in a pending divorce action is "unaffected by the fact that the mandate . . . did not mention attorney fees").  Thus, I would hold that, in a case such as this, where the trial judge otherwise has authority to award attorney's fees and costs, the trial judge may properly consider a timely motion to award attorney's fees for services rendered on appeal even though the appellate court has not ruled upon the fee request and has not addressed the issue in its remand order.  See Code § 20-103.

Contrary to O'Loughlin, I do not believe that "the appellate court . . . [is] the [only] proper forum to determine the propriety of an award of attorney's fees for efforts expended on appeal."  23 Va. App. at 695, 479 S.E.2d at 100.  Indeed, Virginia authority suggests that the trial judge is initially in the best position to assess both the entitlement and quantum of attorney's fees, leaving to the appellate court a review of that decision.  Although the Supreme Court in Craig v. Craig, 115 Va. 764, 80 S.E. 507 (1914), remanded to the circuit court judge the issue of attorney's fees, the Court did not hold that the

appellee was entitled to attorney's fees.  The Court ruled as follows:

> Counsel for appellee have asked that an allowance for counsel fees be made for services rendered in this court.  This we decline to do, being of opinion that the trial court is in a better position to inquire into and do what is right and just between the parties in the first instance than this Court.  We shall, therefore, affirm the decree and remand the cause, but with leave to counsel for appellee to prosecute their claim for compensation before the law and equity court in the first instance, with the right of appeal to this court if a proper case shall be made for its exercise.

Id. at 765, 80 S.E. at 507 (emphasis added).  Thus, the Supreme Court recognized that both the issues of entitlement and quantum of fees were matters that could properly be addressed initially by the trial judge.  See id.; accord Knighton v. Watkins, 616 F.2d 795, 801 (5th Cir. 1980); White v. White, 683 So. 2d 510, 512 (Fla. Dist. Ct. App. 1996) (stating that because the appellate court has "no way of knowing how great is the need . . . , nor how great is the ability to pay," the propriety and amount of an award of attorney's fees usually should first be "addressed by the trial court"), aff'd, 695 So. 2d 381 (Fla. Dist. Ct. App. 1997) (en banc).  Indeed, the trial judge is better positioned to assess the financial needs of the parties and consider evidence germane to the reasonableness of the fee request.

The practical effect of the rule pronounced in O'Loughlin is to require this Court to superintend attorney's fees requests in

domestic relations appeals.  After O'Loughlin, to preserve a claim for attorney's fees expended on appeal, counsel must present the issue of attorney's fees as a question presented on appeal either in the appellant's opening brief or in appellee's cross-appeal.  This Court might possibly consider a timely separate motion bringing the issue to the attention of this Court.  Less certain is a mechanism for presenting the issue before the Supreme Court at the petition stage.  Moreover, as this case demonstrates, if the appellate courts fail to rule on the issue, counsel must request a rehearing to raise anew the entitlement to attorney's fees and request a ruling.  I believe the statutes make that effort unnecessary.

Because I believe that the statutes clearly authorize the trial judge to consider a timely motion for appellate attorney's fees when the mandate is pending on remand, I would affirm the judgment for attorney's fees.  Therefore, I dissent from Part IV.