COURT OF APPEALS OF VIRGINIA


Present:  Chief Judge Fitzpatrick, Judge Benton and
          Senior Judge Duff
Argued at Alexandria, Virginia


WINSTON JEFFREY WATT
                              MEMORANDUM OPINION[*] BY
v.   Record Nos. 2409-97-4   CHIEF JUDGE JOHANNA L. FITZPATRICK
          and 2600-97-4            JUNE 16, 1998

PAMELA SUSETTE PARMER WATT


          FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                M. Langhorne Keith, Judge

          Lawrence D. Diehl (Jeanette A. Irby; Walker,
          Jones, Lawrence, Duggan & Savage, P.C., on
          brief), for appellant.

          James Ray Cottrell (Christopher W.
          Schinstock; Gannon, Cottrell & Ward, P.C., on
          brief), for appellee.



     Winston Jeffrey Watt (father) appeals the trial court's

order granting custody of the parties' child to Pamela Susette

Parmer Watt (mother).  In his thirteen assignments of error,

father contends the trial court erroneously:  (1) ruled on

several evidentiary matters; (2) found a material change in

circumstances based on the child's alienation from her mother;

(3) found changing custody from father to mother to be in the

child's best interests; and (4) disregarded the testimony of an

expert.  For the following reasons, we affirm.


---

[*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

# I. Background

The parties have two children, Suzanne Parmer Watt, born April 7, 1981, and Emily Christine Watt, born March 18, 1991. Pursuant to the parties' final decree of divorce, entered July 28, 1995, mother was granted sole custody of Suzanne and father was granted sole custody of Emily. In the fall of 1995, the parties filed cross-petitions for change in custody, citing problems with visitation and communication. Additionally, mother alleged that father and his current wife, Beebe Belmore, were alienating Emily from her. In September 1995, the trial court found changed circumstances based on both parties' relocations but ordered that sole custody of Suzanne remain with mother in her new home in Florida and sole custody of Emily remain with father in Virginia. The trial court set out a visitation schedule and expressed concern over the possibility of the alienation of Emily from her mother. The trial court specifically ordered father to "ensure that Emily does not call her stepmother 'mom' or any such derivation of mother." Father did not appeal that ruling. Mother appealed the trial court's decision on other issues. This Court affirmed the trial judge's rulings.[1]  See Watt v. Watt, No. 2448-95-4 (May 7, 1996).

On May 20, 1997, mother initiated the instant proceedings by filing a motion to modify custody with respect to Emily. Mother

---

[1]The issue of the appropriateness of requiring father to prevent Emily's use of the term "mom" in reference to her stepmother was not appealed and is therefore the law of the case.

alleged that Emily was having difficulty with the current custody arrangement, that Emily was becoming alienated from her, and that father had violated the trial court's order with respect to furthering mother's relationship with Emily.

On July 11, 1997, before the scheduled hearing on mother's motion, father filed an emergency motion to change summer visitation. Father's motion was based on the opinion of Dr. Lynne Hahnemann, a resident in psychology who had testified at the 1995 custody hearing. Ruling that Dr. Hahnemann was not licensed as a psychologist in Virginia and therefore was not permitted to testify, the trial court denied father's motion. A hearing on the merits of mother's motion was held before the trial judge from September 24 through October 2, 1997.

Viewed in the light most favorable to the prevailing party below, see Johnson v. Johnson, 26 Va. App. 135, 144, 493 S.E.2d 668, 672 (1997), the evidence established the following facts. Both mother's and father's witnesses testified that Emily made numerous statements indicating that she felt emotionally distant from her mother.[2] Emily called Belmore "mom," even after the court order requiring father to discourage this behavior. She

---

[2]Both parties' witnesses, including father himself, testified concerning Emily's statements. Father first objected to this type of evidence during the testimony of Thomas Tomczak and Suzanne Watt. After a brief recess, during which the trial court reviewed Professor Friend's treatise and cases offered by mother's counsel, the court overruled the objections, finding the statements were admissible under the state-of-mind exception or as verbal fact.

referred to mother as "Susette" or "birth mother," and indicated that she was not her real mother. Emily told Carolyn Pierce that mother abused her and did not love her because she spanked her or she went to work and left Emily "'at a pre-school or in a day-care all of my life.'" Emily told mother on several occasions in the presence of Willie Dickson "'Beebe says you don't love me; that she's the only one who loves me.'" Emily also said she "hated" mother and wished she "had not been born."

Suzanne testified that father and Belmore sent gifts to Emily while she was on visitation with mother. They made a "big deal" of her return from visitation with banners, balloons, and presents. Additionally, father and Belmore gave Emily a toll-free number to call them during visitations with mother.

Mother testified that Belmore said she considered mother a "mother in name only." Suzanne testified that Belmore said mother didn't love Emily because she had planned to abort Emily and that was one of the reasons she could not be a good mother to her. Additionally, Belmore told Dr. Kerman, Carolyn Pierce and Jane Lynch that mother abused Emily. Belmore testified as follows: "'You know, Susette?' I said, 'Your uncaring self-centered behavior toward your child, in my opinion, is that of an individual who is mother in name only.'" Belmore acknowledged she does not believe mother has the skills or genuine love and care required to raise Emily.

Dr. Fred Kerman, a clinical psychologist, testified

-4-

regarding the impact on Emily of father's and Belmore's behavior. He stated that, father's and Belmore's efforts to discourage Emily from calling her stepmother "mom" notwithstanding, Belmore had not done everything she could have to maintain the distinction between her role as a stepparent as opposed to a mother to Emily. He also acknowledged that giving the toll-free number to Emily could imply to the child that she was in danger when she was with mother and needed that number to protect herself.

Mother offered additional evidence related to the criteria of Code § 20-124.3. In particular, mother offered evidence that she never interfered with father's visitation with Suzanne, actively promoted a relationship between Suzanne and father, and never refused Emily's requests to phone father while on visitation. With regard to her parenting abilities, mother presented evidence that Suzanne had excellent grades and was thriving under mother's care and protection.

The trial court stated that the 1995 order had reflected its concern about the possibility of Emily's alienation from mother and that father's failure to comply with that order, while not the basis for the court's decision, provided "some evidence of alienation." The trial court found that "through an effort of the father and his wife, there has been an extreme marginalization of the mother's role in the child's life." The court further found that "mother's witnesses are credible and the

evidence of continued allegations of abuse, [referring to mother as] 'birth mother' and things of that nature, right up until the present time, are persuasive to the court that there has been alienation."  The court "did not extend the same degree of credibility or belief to the father's witnesses."  The trial court concluded that the continued alienation of the child from her mother, as well as the mother's fully established home in Florida, constituted a change of circumstances from the 1995 hearing.

The trial court reviewed each of the statutory factors in Code § 20-124.3, finding specifically that "the developmental needs of Emily can be met in Florida."  The trial court considered "the determinative factor in this case" to be the "propensity of each parent to actively support the child's contact and relationship with the other parent."  See Code § 20-124.3(6).  The trial court found that "Emily has been led to believe that her mother is nothing more than a birth mother," and concluded:

> I think the long-term interest of Emily, the importance of knowing that her mother is her mother, is so overwhelming and the evidence I've heard is so compelling that that is not the case now. . . . [I]t's in her long-term interest to make a change in custody.

The trial court awarded sole custody of the child to mother. Father's motion to stay execution of the judgment pending appeal was denied on October 14, 1997.

## II. Evidentiary Issues

Father contends the trial court erred in admitting evidence of the child's out-of-court statements. He argues the evidence was hearsay and was not admissible under any exception to the hearsay rule. We find no error.

Assuming without deciding that testimony describing the child's out-of-court statements was not admissible under an exception to the hearsay rule, we hold that sufficient evidence of her statements was presented without objection to support the trial court's findings. Father objected to the testimony of Thomas Tomczak and Suzanne Watt regarding Emily's statements, but he failed to object to similar testimony of Carolyn Pierce, Willie Dickson, Jayne Lynch and mother. This uncontested evidence included testimony that Emily called her mother "Susette" or "birth mother" and that she said she hated mother and mother abused her, abandoned her, and did not love her.

Moreover, father introduced evidence of Emily's out-of-court statements during his case, including the testimony of Dr. Kerman, Anna Lyon, Beebe Belmore, Briar Bogin, Richard Bogin, and Jayne Lynch. Father himself testified that Emily called Belmore "mom," that she called mother "Susette," and that she said she hated her mother and wished she had not been born. A party objecting to the introduction of evidence waives his objection when he introduces similar evidence on his own behalf. See McGill v. Commonwealth, 10 Va. App. 237, 244, 391 S.E.2d 597, 601 (1990).

Father also contends the trial court erred in admitting a letter from the child's school which included a statement that Belmore had instructed school officials not to disclose any information to mother.  He argues the letter was hearsay and its authenticity was not established.  We disagree.

At trial, father objected to the admission of the letter as follows:  "I'm going to object just based on authenticity.  But certainly the witness can testify as to the letter."  We decline to consider father's hearsay objection, which was first raised in his brief and is not properly before this Court.  See Lee v. Lee, 12 Va. App. 512, 404 S.E.2d 736 (1991) (citing Rule 5A:18).

"'The admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion.'"  Crews v. Commonwealth, 18 Va. App. 115, 118, 442 S.E.2d 407, 409 (1994) (citation omitted).  "Before any writing may be introduced into evidence, it must be authenticated, 'which is the providing of an evidentiary basis sufficient for the trier of fact to conclude that the writing came from the source claimed.'"  Ragland v. Commonwealth, 16 Va. App. 913, 919, 434 S.E.2d 675, 679 (1993) (quoting Walters v. Littleton, 223 Va. 446, 451, 290 S.E.2d 839, 842 (1982)).  "'The amount of evidence sufficient to establish authenticity will vary according to the type of writing, and the circumstances attending its admission, but generally proof of any circumstances which will support a finding that the writing is

genuine will suffice.'"  Id.  Here, mother testified that she physically went to the school where she was personally handed the letter as a response by the school to her request for information about Emily.  These factual circumstances surrounding the letter sufficiently established its genuineness, and its admission into evidence was not an abuse of discretion.

III. Change in Circumstances

Father next contends the trial court erred in finding a material change in circumstances because there was no alienation and the child had no confusion about the identity of her mother. We disagree.

The standard to be applied to a modification of a child custody decree is well settled:

> "A trial court, in determining whether a change of custody should be made, must apply a two-pronged test: (1) whether there has been a [material] change in circumstances since the most recent custody award; and (2) whether a change in custody would be in the best interests of the child."

Wilson v. Wilson, 18 Va. App. 193, 195, 442 S.E.2d 694, 696 (1994) (quoting Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1986)). "'Whether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence.'" Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993) (citation omitted). In chancery cases heard ore tenus the trial court is the sole judge of the credibility of the testimony of the witnesses and all inferences to be drawn therefrom. See Street v. Street, 25 Va. App. 380, 387, 488 S.E.2d 665, 669 (1997) (en banc). This Court will not substitute its judgment in such circumstances for that of the trial court. See Ward v. Commonwealth, 13 Va. App. 144, 148, 408 S.E.2d 921, 923 (1991).

In the instant case, the evidence established father's and

Belmore's continued hostility toward mother, Belmore's attempts to undermine mother in the eyes of both Emily and Suzanne, Belmore's statements to family members perpetuating an unfounded allegation of abuse of Emily by mother, and father's and Belmore's intrusions into mother's visitation through gifts and telephone calls. Based on this evidence, which the trial court explicitly found to be more credible than father's evidence,[3] the trial court concluded that "through an effort of the father and his wife, there has been an extreme marginalization of the mother's role in the child's life" and "that Emily has been led to believe that her mother is nothing more than a birth mother." Additionally, the evidence demonstrated that since 1995 mother had completed the transition in progress at that time, and her home in Florida was established. We hold that the evidence supported the trial court's findings that the alienation of Emily from her mother was ongoing, that mother had a stable home in Florida, and that these were material changes in circumstances justifying a reexamination of custody.[4]

---

[3]The trial court found mother's witnesses were "credible" but "did not extend the same degree of credibility or belief to the father's witnesses."

[4]Father also contends the trial court erred in denying his motion to strike because mother failed to establish a change in circumstances. "'When the sufficiency of a plaintiff's evidence is challenged by a motion to strike, the trial court should resolve any reasonable doubt as to the sufficiency of the evidence in plaintiff's favor.'" Butler v. Yeats, 222 Va. 550, 553, 281 S.E.2d 905, 906 (1981) (citation omitted). In light of this standard and our holding that the evidence supported the trial court's finding of a change in circumstances, the denial of the motion to strike was not error.

## IV. Change in Custody

Father challenges the trial court's award of custody to mother. He contends the child flourished in his home and the trial court's conclusion that mother was capable of meeting Emily's developmental needs was contrary to the evidence and speculative.

"'[I]n determining custody, the court shall give primary consideration to the best interests of the child.'" Sargent v. Sargent, 20 Va. App. 694, 701, 460 S.E.2d 596, 599 (1995) (quoting Code § 20-124.2). The court must consider the factors in Code § 20-124.3 in deciding what custody arrangement is in the child's best interests, including:

> [t]he propensity of each parent to actively support the child's contact and relationship with the other parent, the relative willingness and demonstrated ability of each parent to maintain a close and continuing relationship with the child, and the ability of each parent to cooperate in matters affecting the child.

Code § 20-124.3(6). "As long as the trial court examines the factors, it is not 'required to quantify or elaborate exactly what weight or consideration it has given to each of the statutory factors.'" Sargent, 20 Va. App. at 702, 460 S.E.2d at 599 (quoting Woolley v. Woolley, 3 Va. App. 337, 345, 349 S.E.2d 422, 426 (1986)).

In the instant case, the trial court acknowledged Emily's success and happiness in father's household, but found "it's also

obvious that the mother can meet the needs of the child.  Suzanne is probably the best evidence of that fact in that Suzanne has prospered."  After reviewing and weighing all of the statutory factors, the trial court considered "the determinative factor in this case" to be the "propensity of each parent to actively support the child's contact and relationship with the other parent."  Based upon the evidence of an ongoing pattern of active alienation of Emily from mother and a finding that this was not in the child's best interests, the trial court awarded sole custody to mother.  We hold that credible evidence supported this finding and the decision to award a change in custody was not error.

## V. Expert Testimony

Father also argues the trial court abused its discretion in failing to follow the recommendation of the expert custody evaluator.  He contends the trial court had no reason not to be persuaded by Dr. Kerman's testimony and opinions.  Father's argument lacks merit.

"[T]he fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert."  Street, 25 Va. App. at 387, 488 S.E.2d at 668.  The trier of fact ascertains a witness' credibility, determines the weight to be given to his testimony, and has the discretion to accept or reject any of the testimony.  See id.  In determining the weight to be given to expert testimony, the fact finder may

consider the basis for the opinion. See id. at 388, 488 S.E.2d at 668-69; Gilbert v. Summers, 240 Va. 155, 393 S.E.2d 213 (1990).

In the instant case, the trial court considered that Dr. Kerman never interviewed any of mother's witnesses and was unaware of their information. Furthermore, the trial court could also consider Dr. Kerman's testimony that he did not normally testify when he could not involve both parents in the evaluation, but nevertheless he elected to do so in this case. In light of these facts and the evidence supporting the trial court's rulings, we hold the trial court did not err in rejecting the recommendation of the expert.[5]

Both parties have requested an award of costs and attorneys' fees for this appeal. We find no evidence that either party created unnecessary delay or expense, and the issues raised were not unreasonable. Accordingly, the requests are denied.

For the foregoing reasons, the trial court's custody order is affirmed.

Affirmed.

---

[5]Father also contends the trial court erred in denying his motion to stay execution of the order in light of overwhelming evidence that the change in custody would have a detrimental effect on the child. We hold the trial court did not err in failing to order the child to remain in the environment which it had just determined was not in her best interests. The trial court noted in its ruling that any anticipated transition difficulty was properly before the court during the trial, and the court had "taken it into consideration in making my decision." The trial court's denial of father's motion to stay was well within its discretion.