COURT OF APPEALS OF VIRGINIA


Present:    Judges Benton, Haley and Senior Judge Coleman


TRACY ANN KOHUT

                                                  MEMORANDUM OPINION[*]
v.        Record No. 2010-06-2                         PER CURIAM
                                                   FEBRUARY 13, 2007
KENNETH R. OSBORNE


                FROM THE CIRCUIT COURT OF HANOVER COUNTY
                         John Richard Alderman, Judge

            (Patrick R. Bynum, Jr.; Bynum, Coleman, Goots & Muzi, L.L.P., on
            brief), for appellant.

            (Murray J. Janus; Bremner, Janus, Cook & Stone, on brief), for
            appellee.


        Tracy Kohut appeals a trial court order changing physical custody of her son from her to

Kenneth Osborne, the child's father.  Upon reviewing the record and the briefs of the parties, we

conclude that this appeal is without merit.  Accordingly, we summarily affirm the decision of the

trial court.  See Rule 5A:27.

                                    BACKGROUND

        When the mother and father divorced in 1996, they were given joint legal custody, with

mother having sole physical custody of their son, who was then five years old.  On May 3, 2005,

father filed a motion in the juvenile and domestic relations district court requesting he be

awarded physical custody of their son.  After the juvenile court granted father's motion and

awarded him primary physical custody, mother appealed to the circuit court.

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

At the June 2006 modification hearing in the trial court, the child was fifteen years old. At the hearing, the father testified the son came to live with him in April 2005. At that time, the son contacted him and was "crying hysterically." The father testified the son "had fingernail like rip marks down his neck and bruises on his arms and up by his shoulder." During the fourteen-month period that the son has been with father, there have been no discipline problems. Father also testified that, despite an admonishment by the juvenile court judge to the parties not to discuss the case, when the son returns home from visitation with mother, he says "his mom has been asking questions about the case and quizzing him on it and" denigrating father and father's family. Father described a situation after he obtained physical custody where mother refused to provide him with her new address and telephone number after several requests. At one point, she provided father with a false address. When father asked for the correct address, mother told him he had no right to know where she lived and it was not his concern. Without her address where the child was visiting, father withheld visitation. After eleven separate requests, mother eventually provided the address to her apartment building, but she refused to provide the apartment number until the day of the June 2006 hearing.

Mother acknowledged an incident in her car where she slapped the son in the face because he "was very angry and was cursing and calling [her] names." Mother also testified about an incident in April 2005, during which she and the son argued. Shortly after she sent him to his room, she entered his room and saw him trying to climb out of his window. Mother testified she "grabbed him and pulled him back," and she "wrestled [with him] . . . and [she] restrained him." She held "his hands behind his back" and "held him down on the floor and [she] turned his face to the side." After this incident, the son made other attempts to leave mother's home and go to his father's house.

The evidence also proved that, after the juvenile court awarded father physical custody, mother took the son to meet with a psychologist, who had begun treating mother in November 2005. Mother provided the psychologist with background material about the son, including his hospital treatment records and his school records. Although father was the primary caretaker, mother did not tell father about the meeting or request his permission. Mother also admitted that, while the modification case was pending, she told the son "the experiences and the things [she] experienced with his father." In response to questioning by the guardian *ad litem*, mother acknowledged discussing her concerns about the case and about the father, including issues relating to abuse and her past sexual relationship with the father during the marriage. Mother also testified the visitations with the son since father has gained physical custody have been very enjoyable "and it hasn't been at all like it was."

The guardian *ad litem* spoke with the son prior to the hearing and reported the following to the trial court:

> He feels very safe at his father's home, maybe even safer there than he did at his mother's; that he felt that his mother had gone through some situations in her career and she had been stressed out for the last couple of years; and that there were tensions there that were uncomfortable to him; that now, being at his father's house, he is more comfortable there.

The guardian *ad litem* expressed his concern about the subjects mother discussed with the son and reported that the son felt as if the mother "wants him to think his father is a bad person." The guardian *ad litem* also told the judge the son "enjoys spending time with his mother" but said "there are times when she . . . 'goes off.'" He indicated the son "was concerned that his mother thinks he was wanting to live with his dad to spite her," but the son assured the guardian that was not true and "[h]e loves his mother. . . . He is just more comfortable at his father's house at this point in time." In concluding, the guardian *ad litem* argued:

- 3 -

> I think there has been a change in circumstances. I think the deteriorating relationship between the mother and [the son] that happened last year before this incident in April '05 is a change in circumstances. And, Your Honor, it is my recommendation that [the son] be in his father's custody at this point in time. I think that's where he will be happiest right now and do well; and that I think he should continue to have ample visitation with his mother.

DISCUSSION

When a party requests a modification of a preexisting custody order, the trial court, "in determining whether a change in custody should be made, must apply a two-pronged test." Ohlen v. Shively, 16 Va. App. 419, 423, 430 S.E.2d 559, 561 (1993). First, the trial court must decide "whether there has been a [material] change in circumstances since the most recent custody award." Id. "'Whether a change of circumstances exists is a factual finding that will not be disturbed on appeal if the finding is supported by credible evidence.'" Id. (quoting Visikides v. Derr, 3 Va. App. 69, 70, 348 S.E.2d 40, 41 (1980)).

If the evidence establishes a change in circumstances, the trial court must next determine "whether a change in custody would be in the best interests of the child." Id. The decision to modify a child custody order is committed to the sound discretion of the trial court. See Wilson v. Wilson, 18 Va. App. 193, 195, 442 S.E.2d 694, 695-96 (1994).

The trial court examined the evidence in detail as it related to each factor set forth in Code § 20-124.3 and found "there is a material change in circumstances." As a result, it awarded sole physical custody to father. Although the trial court found that factors 4 and 5 were in equipoise as applied to the parents, the trial court found that factors 1 and 2 (ages and physical and mental conditions of the child and the parents), factor 3 (the relationship of the child with each parent), factor 6 (propensity of each parent to actively support the child's contact and relationship with the other parent), factor 7 (willingness/ability of parent to maintain close, continuing relationship with the child and resolve disputes), factor 8 (reasonable preference of

the child, as reported by the guardian *ad litem*), and factor 9 (the recent abuse of child by mother) justified a change of circumstances in favor of father. Moreover, as to factor 10, which includes other factors as the court deems necessary and proper, the trial court found that mother "has been evasive [and] has not been forthcoming in her testimony in a number of areas."

The trial court's decision to change custody based on a material change in circumstances was supported by credible evidence. In April 2005, mother physically assaulted the son. During litigation, mother continually and inappropriately discussed the case and criticized the father in conversations with the son, despite directives from the respective courts not to do so. As a result of mother's recent conduct, her relationship with the son had deteriorated. In contrast, the evidence proved the son felt safe and secure with father.

The trial court's analysis of the factors demonstrates it exercised sound discretion. Accordingly, we summarily affirm the judgment.

<u>Affirmed.</u>